Williams *v.* Baptist Church (et al., Appellant).

Argued March 12, 1936.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, PARKER, JAMES and RHODES, JJ.

138

*William S. Hudders,* with him *Harvey H. Steckel,* for appellant.

*Morris Perkin,* with him *Claude T. Reno,* for appellee.

OPINION BY JAMES, J., July 10, 1936:

On November 17, 1931, a compensation agreement for total disability was entered into between William H. Williams, employee, the Baptist Church of Slatington, Pa., employer, by its secretary, and the United States Fidelity & Guaranty Company, insurance carrier, by its adjuster, E. J. Brown. The date of the accident was October 27, 1931, and the accident and injury were described as follows: "While coming down off ladder, Claimant stumbled and fell off porch roof, a distance of about 14 feet, causing him to suffer abrasions of head and injury to spine." Stamped across the face of the agreement was, "Approved Dec. 9, 1931. Bureau of Workmen's Compensation." On August 28, 1934, the insurance carrier filed its petition to review the agreement as provided by the first paragraph of section 413 of the Act of April 13, 1927, P. L. 186, for the following reasons: (1) That the agreement was entered into pursuant to a mutual mistake of law and fact in that the claimant at the time of the accident was an independent contractor, (2) that if the claimant was not an

independent contractor the agreement was entered into pursuant to a mutual mistake of law and fact in that claimant's employment at the time of the accident was casual in character and not in the regular course of business of the employer. An answer, generally denying the averments of the petition and denying the agreement should be reviewed for the reason that the petitioner was not authorized to sign the petition on behalf of the Baptist Church, was filed. The referee, to whom the petition was referred, after hearing, found the following facts: "8. The claimant was engaged in an employment which was only occasional, irregular and incidental, for a limited and temporary purpose, and not connected with or constituting any continued employment. 9. The compensation agreement entered into between the parties was made under a mistake of law"; and stated as a conclusion of law: "3. Since the compensation agreement was entered into under a mistake of law, it is reviewable and should be set aside," and thereupon entered an order setting aside the agreement. On appeal to the Compensation Board, the eighth and ninth findings of fact were set aside and the following findings substituted: "8. There is no evidence that the defendant and the insurance carrier did not, at the time compensation agreement was entered into on November 17, 1931 have full knowledge of all relevant facts pertaining to the accident and to the claimant's injury. On the contrary the evidence is conclusive that the defendant did in fact have such full knowledge, and that the insurance carrier had it or could easily have obtained it. The compensation agreement was not founded upon a mistake of fact of any party to the agreement. 9. The petitioner has not met the burden of proof of showing that the compensation agreement was entered into under a mistake of law." In its conclusions of law, the board overruled the referee and substituted the following: "2. The petitioner has not proved

that the compensation agreement was founded upon a mistake of law or of fact. 3. Since the petitioner did not file the petition to set aside the compensation agreement until two years and ten months after the date of the accident, the claimant has been deprived by the petitioner's laches of his right of action at common law. The petitioner being unable to restore the status quo is estopped from setting up its own alleged mistake as a basis for setting aside the compensation agreement''; whereupon it entered an order dismissing the petition. The appeal to the court of common pleas was dismissed and judgment entered for the claimant, from which this appeal was taken by the insurance carrier.

From the testimony, taken before the referee, it appears that claimant, a quarryman, who occasionally did carpenter work, and a trustee of the Baptist Church, was employed by the board of trustees as a carpenter at the rate of 40 cents per hour to enclose a porch on a house owned and rented by the church, the work to be under the supervision of a co-trustee. Claimant had performed carpenter work upon the church and the houses belonging to the church on prior occasions, using his own tools, the materials being furnished by the church. Claimant had the right to quit his employment, and the church, the right to discharge him. The record does not disclose, outside of the narrative in the compensation agreement, how the accident happened. The estimated payroll, in the policy of insurance, included the wages of the claimant and Charles S. Stittler, the agent of the insurance carrier, was informed, prior to the execution of the compensation agreement, claimant was working at the houses belonging to the church. No testimony was offered that any of the parties to the agreement were mistaken as to the facts or law of the case.

The relationship between claimant and the church was not that of an independent contractor. "...... the

general principle is that, if, in rendering services for a compensation, one is obliged to follow the will of his employer only as to the result of the work in hand and not as to the means by which it is to be accomplished, he is generally accounted an independent contractor. When, according to these tests, the evidence shows one, claiming as employee of a defendant, to be an independent contractor, relief under the Compensation Act must be denied; but neither the compensation authorities nor the courts should be solicitous to put claimants in that position when a reasonable view of the evidence warrants a finding that the injured person was an employee": *Gailey v. S. Workmen's Insurance Fund,* 286 Pa. 311, 133 A. 498. Under claimant's employment, although it was for the purpose of enclosing the porch, he was obliged to follow the will of his employer and the latter was interested not alone in accomplishing the result, but the manner in which the work was done under the supervision of a member of the board of trustees; and either party was privileged to discontinue the employment. Such circumstances establish the relation of master and servant, but it does not follow that the injuries were compensable. By section 104 of the Act of June 2, 1915, P. L. 736, 77 PS §22, an employee is excluded from the benefits of the act "whose employment is casual in character and not in the regular course of business of the employer." An employment is casual in character where it is occasional, irregular or incidental as distinguished from regular and continuous, and an employment is in the regular course of the business of the employer only where it has reference to the normal operations which constitute the habitual or regular occupation that the employer is engaged in with an end to winning a livelihood or some gain, excluding incidental or casual operations arising out of the transaction of that business: *Fedak v. Dzialdowski,* 113 Pa. Superior Ct. 104, 107, 172 A. 187; *Quick v.*

*E. B. Kintner & Son et al.,* 113 Pa. Superior Ct. 108, 172 A. 189; *Passarelli v. Monacelli et al.,* 121 Pa. Superior Ct. 32, 183 A. 65. Applying these rules we find claimant's employment to be both casual and not in the regular course of the business of the employer. He was hired only when the work was necessary, on irregular occasions, and the repairing or improving of properties, owned by a church from which it receives income, in no way associated with the church work, cannot be regarded as work done in the course of the employer's business. As a church it was privileged to own the additional properties; but its business was carrying on the work and management of its church, or auxiliary organizations of the church, according to the tenets of its belief.

The Act of June 2, 1915, P. L. 736, art. IV, §413, as amended by the Act of June 26, 1919, P. L. 642, §6, and the Act of April 13, 1927, P. L. 186, §6, 77 PS §771, provides: "The board, or a referee designated by the board, may, at any time, review and modify or set aside an original or supplemental agreement, upon petition filed with the board or in the course of the proceedings under any petition pending before such board or referee, if it be proved that such agreement was procured by the fraud, coercion, or other improper conduct of a party, or was founded upon a mistake of law or of fact." By section 434 of the Act of June 2, 1915, P. L. 736, art. IV, as amended by the Act of June 26, 1919, P. L. 642, §6, 77 PS §1001, a final receipt may be set aside for the same reasons. In construing these sections we have laid down the same general principles as applicable to both alike. "True, a claimant for compensation must prove all facts essential to a recovery by a preponderance of competent testimony *(Vorbnoff v. Mesta Machine Co.,* 286 Pa. 199, 133 A. 256; *Seitzinger v. Ft. Pitt Brewing Co.,* 294 Pa. 253, 258, 144 A. 79) but that rule does not apply where the employer or insurance carrier

desires to terminate an agreement. Then it is one seeking to change the status created by the parties themselves who must assume the burden of proof, as the compensation agreement is prima facie evidence of a compensable accident": *Carson v. Real-Estate Land T. & T. Co.*, 109 Pa. Superior Ct. 37, 39, 165 A. 677. In order to set aside an existing agreement or a final receipt, it must be proved that such was procured by fraud, coercion or other improper conduct of the parties or is founded upon a mistake of law or fact, and the burden of proof is on the petitioner to establish the right to have the agreement or final receipt set aside by evidence reasonably satisfactory that a mistake has been made: *Shuler v. Midvalley Coal Co.*, 296 Pa. 503, 146 A. 146; *Zupicick v. P. & R. C. & I. Co.*, 108 Pa. Superior Ct. 165, 164 A. 731; *Bukovac v. Eastern Coke Co.*, 109 Pa. Superior Ct. 235, 167 A. 658; *Bradley v. Pioneer Oil Co.*, 109 Pa. Superior Ct. 585, 167 A. 660; *Bucher v. Kapp Bros. et al.*, 110 Pa. Superior Ct. 65, 167 A. 652; *Busi v. A. & S. Wilson Co.*, 110 Pa. Superior Ct. 95, 167 A. 655; *Tubbs v. O. T. Oil Co.*, 114 Pa. Superior Ct. 375, 174 A. 836; and that the mistake of law or fact contemplated by either section relates to a fact or condition existing when the agreement sought to be reviewed, modified or set aside, or the final receipt sought to be set aside, was executed: *De Joseph v. Standard Steel Car Co.*, 99 Pa. Superior Ct. 497; *McKissick v. Penn Brook Coal Co.*, 110 Pa. Superior Ct. 444, 168 A. 691; *Yanasavage v. Lehigh Nav. Coal Co.*, 112 Pa. Superior Ct. 497, 171 A. 404. The cases interpreting these sections have largely involved mistakes of fact, but in the recent case of *Repper v. Eichelberger & Co.*, 120 Pa. Superior Ct. 19, 181 A. 379, an award was set aside when the referee based the rate of compensation upon an erroneous view of the law.

Appellant does not argue that the agreement was signed under a mistake of fact, but contends that the rec-

ord establishes that the agreement was executed under a mistake of law. Authorities cited by appellant, decided long before the execution of the agreement clearly indicate that the claimant's employment was casual and not in the regular course of the employer's business, and the principle was reiterated in *Fedak v. Dzialdowski*, supra, and *Quick v. E. B. Kintner & Son,* supra, decided a short time prior to the filing of the within petition to terminate. Having shown a state of facts upon which an employee was not entitled to compensation, appellant argues that the agreement was founded upon a mistake of law. To approve its contention would seriously undermine the binding effect of all voluntary agreements and create such doubt and uncertainty as would seriously hamper the settlement of compensation disputes. In thus reasoning, it loses sight of the fact that having executed a voluntary agreement, it could only be set aside by proof that the agreement was founded upon a mistake either of law or of fact and the burden of proof was upon it. As far as the record shows there is no proof that the agreement was executed under a mistake of law. The agreement speaks for itself and, unless definite proof of grounds as set forth in the act is established, cannot be set aside. We adopt the language of the Compensation Board: "...... The defendant insurance carrier, at least conceivably, might have felt that it was good business to enter into the compensation agreement now before us, even though it was under no legal liability so to do. In the second place, the defendant and the insurance carrier might have voluntarily entered into a compensation agreement which legally they could have disavowed because it might be cheaper so to do than to face a common law action for damages"; and also what was said in the opinion of the court below: "...... No testimony was introduced to

indicate that the petitioner did not know and understand the law as applied to the facts. Nothing appears upon the record that would indicate that the church and the insurance carrier entered into the agreement lulled to sleep over a mistaken notion of the law—that it was with the injured man and against them, until the insurance carrier woke up to assert an alleged right under the law, two years and ten months after it had complied with its agreement, and when, it seems, payments thereunder became irksome. Therefore, from the record before us, it cannot be said that the defendant, or the insurance carrier, or both, did or did not, know the law or made a mistake as to the law relating to liability for compensation in the instant case. This is so because there was no evidence whatsoever to indicate (a) that the agreement was founded on a mistake of fact affecting the legal rights of the parties; (b) that it was founded on a mistake of law; or (c) that it was supposed erroneously that the law required compensation under the facts of the case." Our examination of the record brings us to the same conclusions. In passing upon this appeal, we deem it unnecessary to indulge in any discussion as to just what proof of mistake of law is required where an agreement is voluntarily executed.

We are also of the opinion that appellant is estopped to set up its alleged mistake of law in avoidance of the compensation agreement. The record does not disclose how the accident happened and, therefore, we are required to conjecture as to whether the facts justify an action at common law either against the employer or any other person whose act may have caused the injuries. But whatever rights the claimant had were lost at the time the petition to terminate was filed as more than two years had expired since the accident— the limitation fixed by section 2 of the Act of June 24,

1895, P. L. 236. This principle was recognized in *Kuhn v. Penna. R. R. Co.*, 270 Pa. 474, 113 A. 672, where it was held that a railroad company, which defeated an action of negligence brought by the widow of a deceased employee, solely on the ground that the case was one for the Workmen's Compensation Board, will not be permitted thereafter to assert, in a hearing under the Workmen's Compensation Act, decedent was not in the course of his employment at the time of his death; and in *Buehler v. Phila. & Reading Coal Co.*, 280 Pa. 92, 124 A. 325, where, in a proceeding before the compensation authorities, the defendant denied the jurisdiction of the Compensation Board and averred the train was engaged in interstate commerce, the railroad company was estopped in a subsequent suit for personal injuries from denying the position formerly taken unless the admission of record, on which the estoppel is based, was the result of fraud, accident or mistake. In *Martin v. Crucible Fuel Co.*, 74 Pitts. 140, where an agreement was sought to be reviewed on the ground that it was made under a mistake of law, the court said, "...... the appeal must be dismissed for the reasons that a mistake has not been proved and the claimant cannot be put in status quo." Counsel for appellee has referred to us the cases of *Sunlight Coal Co. v. Floyd*, 233 Ky. 202, 26 S. W. (2nd) 530 (1930) ; *Hayden v. R. Wallace & Sons, Mfg. Co.*, 100 Conn. 180, 123 A. 9 (1923) ; *Bach v. Interurban Railway Co.*, 171 N. W. 723 (Iowa, 1919), involving voluntary agreements in workmen's compensation cases. Although reasons were recognized which we do not adopt, the principle of estoppel was also applied.

Appellant having failed to act with diligence in seeking relief from its mistake, cannot now be permitted to repudiate its voluntary agreement. The principle of equitable estoppel should be recognized in the administration of the Compensation Act, especially as against an insurance carrier whose special knowledge concern-

ing its liability and its duty to investigate the facts and the law places it upon a somewhat different plane than that of an injured employee.

Judgment affirmed.