529 A.2d 56

Fahringer, McCarty & Grey, Inc., and Ohio Casualty Group, Petitioners v. Workmen's Compensation Appeal Board (Green), Respondents.

Submitted on briefs October 6, 1986, before Judges MacPhail, Doyle, and Barry. Reargued March 25, 1987, before President Judge Crumlish, Judges Craig, MacPhail, Doyle, Barry, Colins, and Palladino.

*Fred C. Trenor, Meyer, Darragh, Buckler, Bebenek & Eck,* for petitioners.

*John F. Hooper, Meyer, Unkovic & Scott,* for respondent.

OPINION BY JUDGE DOYLE, July 23, 1987:

This is an appeal by Fahringer, McCarty & Grey, Inc., (Employer) and Employer's insurer, Ohio Casualty Group, from an order of the Workmen's Compensation Appeal Board (Board) which affirmed a referee's decision modifying the rate of compensation payable in a supplemental agreement and denying Employer's petition to recoup $18,320.07 Employer had erroneously paid to Richard V. Green (Claimant).

The facts are undisputed. In accordance with a notice of compensation payable dated June 17, 1977 Claimant received compensation for total disability benefits at the maximum weekly rate of $199 from May 25, 1977 through September 30, 1981 based upon wages of $300.25 per week. These payments were for a compensable injury sustained on May 25, 1977. In accordance with a supplemental agreement dated January 6, 1982 Claimant was receiving partial disability benefits of $115.66 from October 1, 1981 based upon his earning power of $127.00 per week. At a hearing held on September 27, 1983 the parties stipulated that Claimant's average weekly wage was $211.84 (not $300.25) and hence that his correct compensation rate for partial disability was $56.56. The miscalculation of Claimant's weekly wage had gone undetected for approximately six years and meant that Employer had overpaid Claimant in the amount of $18,320.07.

The referee modified the existing agreement[1] but denied Employer the right to recoup the $18,320.07, reasoning that it was equitably estopped from entitlement to the credit. Specifically, the referee found

6. Prior to the filing of the instant petition, the parties assumed, although incorrectly, that the

---

[1] The modification corrected the average weekly wage to $211.84 and the partial disability rate to $56.56 beginning on the date of the modification order, *i.e.*, December 6, 1983.

average weekly wage and disability-rates shown on the notice and agreement were accurate for nearly six years. It should be noted that, in most instances, employers' records and computations of the average weekly wage are generally accepted and relied upon. And there is no evidence to show that this was not the case in the instant matter. Certainly the parties relied upon such assumption for that period.

7. It would be inappropriate now to allow the employer the credit it has requested since it would be detrimental to the claimant.

Accordingly, the referee refused to allow a credit. On appeal the Board noted, *inter alia*, that Claimant's benefits are the sole source of income for Claimant, his wife and child. The Board also noted that the record was devoid of any indication that Claimant committed any fraud upon Employer or its insurer. The Board, determining that the referee's findings and conclusions were properly supported, affirmed. Employer appealed to this Court and by order dated November 25, 1986 we directed that the case be argued before us en banc.

On appeal here Employer asserts that it is entitled to a credit for the overpayment of benefits. What is actually being sought is a retroactive modification. In order to determine the propriety of such a modification, we must examine the power of the Board to modify. We must, in addition, determine if the principles of equitable estoppel are applicable here.

We first consider the applicability of the doctrine of equitable estoppel. This doctrine comes into play when one party through its acts negligently misrepresents material facts knowing or having reason to know that the other party will justifiably rely upon the misrepresentation to its detriment and the other party does so rely. *Hauptmann v. Department of Transportation*, 59 Pa. Commonwealth Ct. 277, 429 A.2d 1207 (1981). The ref-

eree in his finding of fact 6 stated that an employer's computation of weekly average wages is generally relied upon and assumed this to be the case in the instant matter. Even assuming such to be true, however, we do not believe that a workmen's compensation claimant can *justifiably* rely upon statements of an opposing party as to what his own weekly wages were for computation purposes. We recognize that the Employer and its insurer would probably possess greater expertise in calculating Claimant's benefits, but nonetheless believe that equitable estoppel is inapplicable where one merely accepts without question what is in effect the opposing party's assessment of damages.[2]

Additionally, there is a competing equitable doctrine at play here. Prior caselaw has recognized the principle of unjust enrichment in workmen's compensation law. In *General v. E. Roseman Co.*, 21 Pa. Commonwealth Ct. 72, 343 A.2d 683 (1975) the employer offered its injured worker a lump sum payment of $7,000 representing pre-payments of total disability benefits. The Court did not reach the question of whether the lump-sum payment was illegal, but merely assumed for purposes of argument that it was. Despite this assumption, the employer was allowed a full credit because The Pennsylvania Workmen's Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§1-1001,

---

[2] We believe that *Williams v. Baptist Church*, 123 Pa. Superior Ct. 136, 186 A. 168 (1936) relied upon by Claimant is inapposite here. *Williams* involved application of the doctrine of equitable estoppel against an employer and its insurer where they had failed to investigate thoroughly the facts surrounding Claimant's injury and then attempted nearly three years later to avoid further liability by introducing facts that could have earlier been discovered. The estoppel theory was applicable in *Williams* because there the employee gave up a potential lawsuit because employer waited nearly three years to file its petition.

does not authorize a double recovery of benefits. Here, the simple fact is that Claimant received more than $18,000 to which he was not entitled. Certainly, if an employer who entered into what was assumed to be an *illegal* agreement is entitled to restitution based on principles of unjust enrichment, the instant Employer, who pursues his right to credit with clean hands, must also be entitled to restitution.[3]

We do not believe, however, that the Board's power to modify the agreement and thereby award restitution is unlimited. Section 413 of the Act, 77 P.S. §771, provides:

> A referee of the department may, at any time, review and modify or set aside a notice of compensation payable and an original or supplemental agreement or upon petition filed by either party with the department, or in the course of the proceedings under any petition pending before such referee, if it be proved that such notice of compensation payable or agreement was in any material respect incorrect.

It is clearly established that where mathematical miscalculation occurs, this Section may be properly invoked to correct the error. *Fowler v. Workmen's Compensation Appeal Board*, 38 Pa. Commonwealth Ct. 503, 393 A.2d 1300 (1978); *Drozd v. Workmen's Compensation Appeal Board (The Lion, Inc. and Liberty Mutual Insurance Co.)*, 86 Pa. Commonwealth Ct. 364, 485 A.2d 96 (1984). It is also established, however, that the referee or Board's authority to modify is limited to correcting errors in *existing* agreements. *DeMontis v. Workmen's Compensation Appeal Board*, 34 Pa. Common-

---

[3] We decline to consider as analogous cases in which an employer seeks credit for payments made by a third party to an injured claimant.

wealth Ct. 225, 372 A.2d 950 (1977); *see also Glen Alden Corp. v. Tomchick,* 183 Pa. Superior Ct. 306, 130 A.2d 719 (1957). The doctrine of unjust enrichment is an equitable one; the Board, however, does not have its roots in equity. While we do not believe that this fact precludes the Board from employing certain equitable principles, its use of such principles must be restricted in light of its statutory constraints. We are of the view that the original agreement in the instant case is no longer "existing," having been replaced by the supplemental one. Therefore, as to overpayment made under *that* agreement, we believe that *DeMontis,* as it interprets Section 413, precludes the referee or Board from permitting a recoupment. As to payments made under the supplemental agreement prior to its modification, however, we believe that restitution is within the Board's power and hence appropriate. We will, therefore, direct the Board on remand to fashion an order directing that such restitution be made.[4] We do, however, sympathize with Claimant's financial difficulties in making restitution. Accordingly, the Board is directed to order a sum deducted from each of Claimant's benefit checks in an amount the Board believes will be just under the circumstances and manageable for Claimant.[5]

## ORDER

Now, July 23, 1987, the order of the Workmen's Compensation Appeal Board, No. A-87458 dated February 7, 1985, is affirmed insofar as it allowed modification of Claimant's average weekly benefit rate from $300.25 to $211.84 and modification of Claimant's par-

---

[4] In allowing this remedy we also recognize that legislative changes to Section 413 have relaxed the standards for setting aside an award. Fraud is no longer required.

[5] As of the date of the hearing, the overpayment for partial disability benefits was $5,206.28.

tial disability benefits from $115.66 to $56.56. It is further affirmed insofar as it allowed deletion of material in the supplemental agreement and insofar as it allowed counsel fees. The order is reversed insofar as it held that the doctrine of equitable estoppel precluded Employer from seeking recoupment of monies erroneously paid under the supplemental agreement, *i.e.*, a sum of $5,206.28. This case is remanded to the Board for the taking of additional testimony on Claimant's financial situation, if necessary, and for recomputation of benefits consistent with the foregoing opinion.

Jurisdiction relinquished.

Judge COLINS dissents.