559 A.2d 67

Ronald Lawrence, Petitioner *v.* Workmen's Compensation Appeal Board (Commercial Lovelace Motor Freight, Inc./Banner Industries), Respondents.

Commercial Lovelace Motor Freight, Inc./Banner Industries, and Liberty Mutual Insurance Co., Petitioners *v.* Workmen's Compensation Appeal Board (Lawrence and Aetna Life & Casualty Co.), Respondents.

Submitted on briefs April 5, 1989, to President Judge CRUMLISH, JR., and Judges CRAIG, DOYLE, COLINS, PALLADINO, McGINLEY and SMITH.

*William F. Goodrich, Dixon & Goodrich, P.C.*, for petitioner/respondent, Ronald Lawrence.

*James R. Zies, Baglinski and Bashline,* for petitioners/respondents, Commercial Lovelace Motor Freight, Inc./Banner Industries and Liberty Insurance Company.

*Roy F. Walters, Jr., Fried, Kane, Walters & Zuschlag,* for petitioners/respondents, Commercial Lovelace/Banner Industries and Aetna Life & Casualty Co.

OPINION BY JUDGE MCGINLEY, May 10, 1989:

Ronald Lawrence (Claimant), Commercial Lovelace Motor Freight (Employer), and Liberty Mutual Insurance Company (Liberty Mutual), appeal from an order of the Workmen's Compensation Appeal Board (Board) affirming a referee's decision reinstating Claimant's compensation payments and modifying the referee's decision ordering Liberty Mutual to reimburse Aetna Life and Casualty Company (Aetna) for compensation payments made by Aetna to the Claimant. We affirm.

Claimant was employed as a truck driver for Employer on August 20, 1979, when he suffered an acute back sprain while in the course of his employment. On August 31, 1979, Liberty Mutual filed a notice of compensation payable. On November 3, 1980, Claimant returned to work and his benefits were suspended. On December 2, 1982, Claimant again sustained an alleged back injury while in the course of his employment. In the interim Employer changed workmen's compensation insurance carriers and was insured by Aetna. On January 2, 1983, Aetna filed a notice of compensation payable awarding Claimant compensation benefits for the December 2, 1982, injury.

On March 19, 1984, Employer, represented by Aetna, filed a petition for modification of Claimant's benefits under the January 2, 1983, notice of compensation payable alleging a change in Claimant's disability and contending that Claimant was partially disabled. Claimant subsequently filed a petition for review of the notice of compensation payable alleging that Aetna was not paying his medical bills. On April 19, 1985, the Claimant filed a petition for reinstatement of compensation against Employer and the previous insurer, Liberty Mutual, under the notice of compensation payable filed August 31, 1979. In that petition, Claimant alleges that on May 4, 1984, he again became totally disabled from all employment.[1] At the referee's hearing, Claimant testified on his own behalf. Claimant subsequently introduced the deposition testimony of Dr. Mario Ludmer, a board certified neurosurgeon. Employer also introduced a subsequent deposition of Dr. Ludmer into the record.

In his decision, the referee found that Claimant was totally disabled as a result of the work-related injury suffered on August 20, 1979. The referee concluded that Claimant sustained no compensable injury on December 2, 1982, and that any physical disabilities experienced by Claimant after that date were a continuation of the injury Claimant sustained on August 20, 1979.

Further, the referee ordered that the notice of compensation payable filed August 31, 1979, be reinstated,

---

[1] We are puzzled as to why Claimant alleges in his petition for reinstatement of compensation under the August 31, 1979, notice of compensation payable filed by Liberty Mutual that he became totally and permanently disabled as of May 4, 1984, when in fact, the last day Claimant was employed was December 2, 1982.

Presumably, Claimant was acting in a precautionary, but ineffective manner in order to avoid a total cessation of all benefits which would result if Aetna's notice of compensation payable was set aside. Nevertheless, the use of the May 4, 1984, date in Claimant's April 19, 1985, petition for reinstatement is baffling.

that Employer's petition for modification be dismissed and that Liberty Mutual reimburse Aetna for all compensation benefits paid to Claimant after December 2, 1982.

The Board modified the decision and order of the referee by setting aside the notice of compensation payable filed by Aetna on January 2, 1983, and reduced the amount of reimbursement from Liberty Mutual to Aetna from $284.00 per week to $227.00 per week. Employer, Liberty Mutual and Claimant appeal.

Claimant presents two issues for our review. Employer and Liberty Mutual present three additional issues as well as advancing the same two issues as Claimant. Claimant, Employer and Liberty Mutual contend that the referee erred by setting aside the notice of compensation payable filed by Aetna for the Claimant's December 2, 1982, work injury without any evidence produced or findings of fact that the notice of compensation payable had been entered into fraudulently or by mistake or because of an inability to timely investigate Claimant's injury. They also contend the referee used an improper standard in his review of the medical testimony to determine if Claimant's disability was a recurrence or an aggravation of Claimant's prior injury.

Additionally, Employer and Liberty Mutual contend that the referee erred by setting aside Aetna's notice of compensation payable without making any findings of fact or conclusions of law; that the referee's findings and conclusions to the effect that Claimant sustained no compensable injury on December 2, 1982, were not supported by substantial evidence; and that the referee had no authority to order Liberty Mutual to reimburse Aetna for all payments made to Claimant after December 2, 1982.

Our scope of review in workmen's compensation appeals where both parties have presented evidence is limited to a determination of whether constitutional

rights have been violated, an error of law was committed or whether any finding of fact was not supported by substantial evidence. *Hammer v. Workmen's Compensation Appeal Board (Gannondale),* 105 Pa. Commonwealth Ct. 356, 524 A.2d 550 (1987).

Claimant, Employer and Liberty Mutual all contend that the referee erred by setting aside Aetna's notice of compensation payable filed January 3, 1983, without making any findings of fact as to whether that notice of compensation had been entered into by fraud, mistake or inability to timely investigate the Claimant's injury. We disagree.

Section 413 of The Pennsylvania Workmen's Compensation Act (Act) of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §771 provides:

> A *referee of the department may, at any time, review and modify or set aside a notice of compensation payable* and an original or supplemental agreement or upon petition filed by either party with the department, or in the course of the proceedings under any petition pending before such referee, if it be proved that such notice of compensation payable or agreement was in any material respect incorrect. (Emphasis added.)

In Finding of Fact No. 2 the referee states:

> In consideration of all the evidence of record, and especially the competent and credible medical evidence offered by the two depositions of Dr. Mario Ludmer, wherein the doctor diagnosed the claimant as suffering from adhesive arachnoiditis, it is found as a matter of fact that the physical impairment of claimant is causally related and directly attributable to work-related injury of August 20, 1979. This work-related injury required a myelogram and laminectormy [sic] which was a

leading factor in giving rise to the adhesive arachnoiditis. This logical medical reasoning on the part of Dr. Ludmer, the treating physician, was first brought forth at his deposition on July 26, 1984, and again at his second deposition on November 6, 1985.

A review of the record indicates that the testimony of Dr. Ludmer provides substantial evidence for the referee's finding that Claimant's physical impairment is causally related and directly attributable to the work-related injury Claimant sustained on August 20, 1979.[2] This finding, in turn, supports the referee's Conclusion of Law No. 3 which states:

> 3. Based upon all of the facts in the case, it is concluded as a matter of law that the claimant sustained no compensable injury on December 2, 1982, and physical disabilities experienced by the claimant after that date were a continuation of the injury the claimant sustained on August 20, 1979.

These findings by the referee provide the factual basis for the Board's decision to set aside the notice of compensation filed by Aetna.

The authority to set aside a notice of compensation payable under Section 413 of the Act, 77 P.S. §771 was limited by our Supreme Court in *Beissel v. Workmen's Compensation Appeal Board (John Wannamaker, Inc.)*, 502 Pa. 178, 465 A.2d 969 (1983). In *Beissel* the Court held that where an employer had an opportunity to investigate the cause of an employee's disability and did investigate, a notice of compensation payable filed by the employer could not be set aside.

However, in *Barna v. Workmen's Compensation Appeal Board (Jones and Laughlin Steel)*, 513 Pa. 518, 522

---

[2] Deposition of Mario Ludmer, M.D., July 26, 1984, (Ludmer Deposition I) at pp. 31-32.

A. 2d 22 (1987), the Court modified its holding in *Beissel.* In *Barna,* the Court reasoned that Section 413 of the Act, 77 P.S. §771 cannot be ignored and that compensation may be terminated where it is paid under a notice of compensation which is materially incorrect. The Court interpreted this provision to promote early payment to injured employees while preserving the employer's right to investigate the employee's claim.

In this case, Aetna incorrectly awarded Claimant benefits for an alleged December 2, 1982, injury. The referee and Board had the authority under Section 413 of the Act, 77 P.S. §771 to set aside the notice of compensation filed by Aetna. The Board's decision to do so is supported by the referee's findings of fact set forth herein. Accordingly, we find no error committed by the Board.

Claimant, Employer and Liberty Mutual also contend that the referee erred by failing to utilize the proper standards in determining whether Claimant's disability was due to an aggravation as opposed to a recurrence of Claimant's prior injury. In the same vein, Employer and Liberty Mutual contend that the referee's determination that Claimant sustained no compensable injury on December 2, 1982, is not supported by substantial evidence. These parties allege that in *City of Williamsport v. Workmen's Compensation Appeal Board (Schmuck),* 55 Pa. Commonwealth Ct. 618, 423 A.2d 817 (1980) we established a rule requiring the referee to determine whether an intervening incident or subsequent injury contributed materially to a disability.

In *City of Williamsport,* we reasoned that whether or not an intervening incident caused or contributed to the disability is a question of fact to be determined by the fact-finder. *City of Williamsport Id.* at 622, 423 A.2d at 818. If the intervening incident contributes materially to the disability, it creates a separately compensable injury. If not, it does not constitute a separately compensable

injury. This finding must be supported by substantial evidence. *City of Williamsport Id.* at 623, 423 A.2d at 819.

The referee found that Claimant suffered from adhesive arachnoiditis which was directly attributable to Claimant's work-related injury sustained on August 20, 1979. On this basis, the referee concluded that Claimant suffered no compensable injury on December 2, 1982. These findings are supported by the testimony of Dr. Ludmer. He testified that adhesive arachnoiditis is a progressive disease which was directly attributable to his August 20, 1979, work injury.[3] Thus, the referee did not err.

Employer and Liberty Mutual also contend that the referee erred in ordering Liberty Mutual to reimburse Aetna for all compensation payments made after December 2, 1982. Specifically, Employer and Liberty Mutual argue that the referee is without authority to order this reimbursement. We disagree.

In this case, the Board affirmed the referee's reinstatement of compensation payable filed by Liberty Mutual on August 31, 1979, which awarded Claimant $227.00 per week in compensation benefits. The Board subsequently ordered Liberty Mutual to reimburse Aetna at the rate of $227.00 per week for each week Aetna paid benefits to Claimant.

In *Fahringer, McCarty & Grey v. Workmen's Compensation Appeal Board (Green)*, 107 Pa. Commonwealth Ct. 597, 529 A.2d 56 (1987) we held that although the Board is not precluded from employing certain equitable principles, the Board's authority to modify is limited to correcting errors in existing agreements. Aetna's notice of compensation payable was correctly set aside by the

---

[3] Deposition of Mario Ludmer, M.D., November 6, 1985, (Ludmer Deposition II) at pp. 11-12, 20.

Board and is no longer in existence. Hence, Aetna may not recover the entire amount of the overpayment made to Claimant.[4] However, in *Fahringer* we also referred to our decision in *General v. E. Roseman Co.*, 21 Pa. Commonwealth Ct. 72, 343 A.2d 683 (1975) wherein we concluded that the provisions of the Act do not authorize Claimant to receive a double recovery. *Fahringer*, 107 Pa. Commonwealth Ct. 601-602, 529 A.2d at 58. Accordingly, Liberty Mutual must reimburse Aetna at the rate of $227.00 per week for each week Aetna paid benefits to Claimant.

The order of the Board is affirmed.

## ORDER

AND NOW, May 10, 1989, the order of the Workmen's Compensation Appeal Board in the above-captioned proceedings is hereby affirmed.

---

[4] On January 2, 1983, when Aetna filed its notice of compensation payable for Claimant's alleged December 2, 1982, injury, the maximum allowable weekly rate had increased subsequent to Claimant's August 20, 1979, injury covered by Liberty Mutual. Accordingly, Aetna paid Claimant $284.00 per week in benefits as opposed to Liberty Mutual which paid Claimant $227.00 per week in benefits.