776 A.2d 951

HENKELS & McCOY, INC., Appellant,

v.

WORKERS' COMPENSATION APPEAL
BOARD (HENDRIE), Appellee.

Cross Appeal of Hendrie at 62 MAP 2000.

Daniel Hendrie,

v.

Workers' Compensation Appeal Board (Henkels & McCoy, Inc.).

Appeal of Henkels & McCoy, Inc.

Cross–Appeal of Hendrie at 64 MAP 2000.

Supreme Court of Pennsylvania.

Argued Dec. 4, 2000.

Decided July 19, 2001.

Saylor, J., dissented and filed opinion.

494

Barbara Dale Huntoon, Stephen J. Harlen, Philadelphia, for Henkels & McCoy, Inc.

Joseph A. Prim, Philadelphia, for Daniel Hendrie.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO, NEWMAN, SAYLOR, JJ.

## OPINION

CAPPY, Justice.

The issues presented in this appeal involve (1) the eligibility of a person involuntarily committed as a condition of probation for workers' compensation benefits pursuant to section 306(a)(2) of the Workers' Compensation Act ("Act"), 77 P.S. § 511(2)[1], and (2) the entitlement of an employer to a credit for overpayment of benefits. For the reasons set forth herein,

1. At the time that the petition for review was filed, section 306(a)(2) of the Act provided that: "Nothing in this act shall require payment of compensation for any period during which the employe is incarcerated after a conviction." 77 P.S. § 511(2). This section was amended in 1996, and now states: "Nothing in this act shall require payment of compensation under clause (a) or (b) [77 P.S. §§ 511 and 512] for any period during which the employe is incarcerated after a conviction or during which the employe is employed and receiving wages equal to or greater than the employe's prior earnings." 77 P.S. § 511.1.

we affirm, although on different grounds than those relied upon by the Commonwealth Court.[2]

On December 20, 1980, Daniel Hendrie ("Claimant") injured his back during the course of employment. His employer, Henkels & McCoy, Inc. ("Employer") began paying Claimant total disability benefits at a rate of $242.00 per week pursuant to a notice of compensation payable.

On April 11, 1990, Claimant was convicted of criminal trespass and sentenced to two to five years of imprisonment at Bucks County Correctional Facility. During this period of imprisonment, on August 5, 1993, Claimant was involuntarily committed to Norristown State Psychiatric Hospital ("NSH") pursuant to section 304 of the Mental Health Procedures Act, 50 P.S. § 7101 et seq. after he set a fire in his cell.

Claimant was scheduled to be released from NSH on March 9, 1994, when his maximum term of confinement for the criminal trespass conviction expired. However, on March 4, 1994, Claimant was charged with making terroristic threats arising from calls he made while in the custody of Bucks County prison in December 1993 to February 1994. On October 26, 1994, as a result of Claimant's plea of nolo contendere, he was sentenced to five years of probation, with the special condition that he was to be involuntarily committed to NSH. See 42 Pa.C.S. § 9754(c)(3) (as a condition of probation, court may require defendant "[t]o undergo available medical or psychiatric treatment and to enter and remain in a specified institution, when required for that purpose.").

On May 22, 1995, Employer petitioned to review Claimant's benefits, alleging that the petition "is filed solely for purpose [sic] of subpoenaing records not otherwise available, and does not challenge claimant's continued receipt of workers' compen-

2. Appellate review of a workers' compensation order is limited to determining whether constitutional rights have been violated, an error of law has occurred, rules of administrative procedure have been violated, or a finding of fact necessary to support the adjudication is not supported by substantial evidence. 2 Pa.C.S. § 704; *K–Mart Corp. v. WCAB (Fitzsimmons)*, 561 Pa.111, 114, 116, 748 A.2d 660, 661–62 (2000). As this appeal presents a question of law, our scope of review is plenary. *Id.* at 662.

sation benefits at this time."[3]  On March 14, 1996, Employer unilaterally ceased payment of benefits.  On May 2, 1996, Claimant filed a penalty petition alleging that Employer's unilateral cessation of payments violated the Act; Claimant also requested the reinstatement of benefits.  Employer answered the penalty petition, asserting that it acted in compliance with section 306(a)(2) of the Act.

Following hearings, the Workers Compensation Judge ("WCJ") rendered an opinion addressing Claimant's entitlement to benefits during two discrete time periods.  As to the period from August 31, 1993 (the effective date of section 306(a)(2)) through March 4, 1994, the WCJ concluded that Claimant was "incarcerated" after a conviction at NSH because he was transferred to NSH by criminal court order, he continued serving his prison term at NSH, and he was not on probation or parole.  The WCJ granted Employer a credit for benefits paid during the period of incarceration from August 31, 1993 until March 9, 1994.

As to the period after March 9, 1994, the WCJ concluded that Claimant was not "incarcerated" because Claimant was on probation and not under any sentence of incarceration.  The WCJ ordered Employer to reinstate Claimant's benefits as of March 10, 1994.  With regard to Claimant's penalty petition, the WCJ found that the Employer violated the Act by failing to pay benefits after March 9, 1994, but he did not assess a penalty because of the lack of legal precedent regarding section 306(a)(2).  The Workers Compensation Appeal Board affirmed, and both parties appealed.

In a published opinion, the Commonwealth Court affirmed in part and reversed in part.  For the period from August 31, 1993 through March 9, 1994, the Commonwealth Court agreed with the WCJ that Claimant was "incarcerated after a conviction", reasoning that that phrase "refers to persons sentenced

---

3.  The WCJ stated that the May 22, 1995 petition alleged that claimant was no longer entitled to benefits because he was incarcerated.  No such allegation appears in the petition.  Employer contends that the petition to review was later amended to a Petition for Suspension of Compensation based on Claimant's commitment at NSH.  However, Employer fails to indicate when or where this amendment occurred.

to partial or total confinement in a jail or penitentiary after conviction in a criminal proceeding." 738 A.2d at 4. Specifically, Commonwealth Court looked to Black's Law Dictionary, which defines "incarceration" as follows: "Imprisonment; confinement in a jail or penitentiary. See imprisonment." BLACK'S LAW DICTIONARY 522 (6th ed.1990). The Commonwealth Court determined that the word "incarcerated" had to be construed in terms of a criminal proceeding, and noted that during criminal proceeding, the offender receives a sentence after conviction. The court also recognized that sections 9724 and 9725 of the Criminal Code provide for sentences of partial or total confinement in which the prisoner is to be committed to a jail or penitentiary, and that section 9762 provides that such sentences are to be served in the Bureau of Corrections or a county prison. 42 Pa.C.S. §§ 9724–25 & 9762. While the Commonwealth Court agreed that Claimant was not entitled to benefits during this period of incarceration, the Commonwealth Court determined, contrary to the WCJ's holding, that Employer was not entitled to a credit for overpayments made to Claimant during this period since Employer failed to request a supersedeas [4] until August 17, 1997.

As to the period after March 9, 1994, the Commonwealth Court agreed with the WCJ that Claimant was *not* "incarcerated after a conviction", since he was not serving a sentence of partial or total confinement in a jail or penitentiary, but rather was serving a sentence of probation with a special condition that he receive treatment at NSH. Nevertheless, the court reversed the WCJ's reinstatement of benefits because Claimant's loss of wages after March 9, 1994 was due to his treatment at NSH, not his work injury. The court relied on *Banic v. WCAB (Trans–Bridge Lines, Inc.)*, 550 Pa.276, 705 A.2d 432 (1997), in which this court held that a claimant who was incarcerated in prison is not entitled to workers' compensation benefits because the work-related injury is no longer the cause of the claimant's loss of earning power. *Id.* at 437.

---

4. The Workmen's Compensation Supersedeas Fund is a fund from which employers can recoup payments made to claimants when it is determined that the claimants were not entitled to those benefits. *See* 77 P.S. § 999.

While stating that the Claimant in the instant case was not "incarcerated after a conviction" after March 10, 1994, the Commonwealth Court nevertheless found that his loss of earning power was no longer the result of his work injury, but the result of his commitment to NSH for treatment of his mental illness.

■ The first issue raised by Employer is whether Claimant was "incarcerated after a conviction" within the meaning of section 306(a)(2) of the Act when he was serving a sentence of probation with the special condition that he be involuntarily committed to a state psychiatric hospital. Employer asserts that the definition of "incarceration" includes "imprisonment", which in turn is defined in pertinent part by Black's Law Dictionary as follows:

> The detention of a person contrary to his will. The act of putting or confining a man in prison. The restraint of a person's personal liberty; coercion exercised upon a person to prevent the free exercise of his powers of locomotion....
>
> Every confinement of the person is an "imprisonment", whether it be in a prison, or in a private house, or even by forcibly detaining one in the public streets.....

BLACK'S LAW DICTIONARY 519–20 (6th ed.1990).

Employer reasons that beginning on March 9, 1994, although Claimant was technically on probation, pursuant to a court order related to his sentence for a criminal conviction, he remained involuntarily confined at NSH, and thus he was "incarcerated after a conviction."

Claimant responds that Employer improperly equates incarceration with imprisonment. He asserts that the General Assembly intended to preclude the payment of workers' compensation benefits to an individual who is sentenced to incarceration in a penal facility. Claimant further contends that after December of 1991, it was his mental health condition resulting from his work injury that caused his commitment and not his conviction pursuant to the Criminal Code.

The term "incarceration" was not defined by the legislature, so we must construe it in accordance with its common and

ordinary meaning. 1 Pa.C.S. § 1903(a). "Incarceration" is commonly defined to include both "imprisonment" and "confinement." [5] In contrast to one of the definitions in Black's Law Dictionary, these definitions do not limit the confinement to a jail or penitentiary.

The Commonwealth Court has had the occasion to interpret section 306(a)(2) in *Brinker's International, Inc. v. WCAB (Weissenstein)*, 721 A.2d 406 (Pa.Cmwlth.1998). In *Brinker's*, the claimant was injured during the course of employment and subsequently filed a claim petition for total disability benefits. Before hearings began on the claim petition, the claimant was incarcerated at ARC House, a detention and alcohol recovery facility, due to his conviction for driving under the influence. The claimant was eligible for work release for twelve hours per day, six days a week. Nevertheless, the court denied benefits, stating in pertinent part:

> Although a prisoner on work release is typically granted the privilege of leaving an institution for a limited period of time and is not confined for the remainder of the day, we do not believe that the term "incarcerated" in Section 306(a)(2) should be narrowly defined to apply only to prisoners who are confined inside the walls of a jail 100 percent of the time. This is because a prisoner on work release remains in the constructive custody of the Commonwealth, and may be charged with escape if he or she fails to return to the prison or housing facility from outside employment.

*Id.* at 410 (internal citation omitted).

We find this reasoning to be instructive in the case *sub judice*. While Claimant was not in a jail, he remained at NSH in the constructive custody of the Commonwealth. His involuntary confinement in a state psychiatric hospital pursuant to a criminal court order is akin to imprisonment at a penal facility. Any violation of his probationary condition would have made him subject to harsher discipline by the court.

**5.** *See, e.g.*, THE OXFORD AMERICAN DICTIONARY AND LANGUAGE GUIDE 494 (1999) ("to imprison or confine"); THE RANDOM HOUSE DICTIONARY OF THE ENGLISH LANGUAGE 965 (2d Ed.1987) ("1. to imprison; confine. 2. to enclose; constrict closely.").

Contrary to the Commonwealth Court, we do not believe that the General Assembly intended to narrowly limit the term "incarceration" solely to confinement in a penal facility. It is evident that the legislature sought to preclude the payment of workers' compensation benefits to persons who are convicted of violations of the Pennsylvania Crimes Code and who, as a result of those convictions, are thereafter removed from the work force. Claimant is such a person. He was convicted of the crime of committing terroristic threats. Following his conviction, pursuant to a criminal court order, he was required to remain involuntarily at NSH as a condition of his probation. Therefore, we hold that the Commonwealth Court erred in holding that Claimant was not "incarcerated after a conviction" after March 9, 1994.

Claimant also argues that his placement at NSH was due to his work injury, rather than his conviction. He asserts that he has not had the opportunity to prove that his current commitment is due to his work injury rather than his conviction. We disagree. Claimant was placed at NSH pursuant to a criminal conviction for making terroristic threats. Pursuant to section 306(a)(2), he is precluded from receiving benefits after such a conviction.

■ The second issue Employer raises is whether the Commonwealth Court erred in denying Employer a credit for overpayments made to Claimant from August 31, 1993 to March 9, 1994 (the first period at issue in these proceedings). Although Employer sought a credit from August 31, 1993, Employer did not request a supersedeas until nearly four years later, on August 17, 1997. The Commonwealth Court denied reimbursement for these overpayments because such reimbursement is due from the date of the request for supersedeas. 738 A.2d at 5 (*citing Department of Labor and Industry v. WCAB (Bethlehem Mines Corp.)*, 79 Pa.Cmwlth. 290, 469 A.2d 705 (1984)).

Employer does not challenge this holding. Rather, Employer contends that it could not have stopped compensation payments until the Commonwealth Court's decision in *Banic*

*v. WCAB (Trans Bridge Lines, Inc.)*, 664 A.2d 1081 (Pa. Cmwlth.1995), *aff'd on other grounds*, 550 Pa. 276, 705 A.2d 432 (1997), wherein the Commonwealth Court held that section 306(a)(2) of the Act is self-executing. Employer asserts that it could have stopped payments as of August 31, 1993 (the effective date of section 306(a)(2)), but that it continued to pay until the law was settled. Employer claims that it is entitled to a credit since it cannot waive a right to recoup payments that it never knew it had. We disagree. *Banic* does not shed any light on recoupment of overpayments. While the law remained unsettled, rather than continue to voluntarily make payments, Employer could have filed a petition to suspend benefits, as did the employer in *Banic*.

Alternatively, Employer urges us to apply the equitable doctrines of restitution and unjust enrichment. Employer cites to *Fahringer, McCarty & Grey, Inc. v. WCAB (Green)*, 107 Pa.Cmwlth. 597, 529 A.2d 56 (1987), in which the court, to prevent unjust enrichment, credited the employer for overpayments due to an undetected mathematical miscalculation. As the Commonwealth Court below properly held, Employer's payment in this case was not the result of an undetected mathematical calculation but "simply the result of Employer's decision to continue paying benefits to Claimant during his incarceration without contesting Claimant's right to benefits under section 306(a)(2) or under prior case law." 738 A.2d at 5 (footnotes omitted). We decline to create a special exception for parties who fail to make timely use of the available remedy of a supersedeas request.

Finally, Employer asserts that to deny a credit for periods of incarceration after a criminal conviction would shock the conscience and would violate public policy. Employer analogizes to *Graves v. WCAB*, 668 A.2d 606 (Pa.Cmwlth.1995), in which the Commonwealth Court denied benefits to a prisoner who was injured while working at a job that he had secured as an escapee. As the holding in *Graves* was expressly limited to the proposition that an escape from official detention renders a claimant ineligible for workers' compensation benefits, *id.* at 609, this case is inapt.

Claimant, in a cross-petition, argues that the Commonwealth Court erred by *sua sponte* deciding that Claimant's loss of wages after March 9, 1994 was not due to his work injury. As we have concluded that Claimant is not entitled to compensation for that period because he was incarcerated after a conviction, we need not address this issue.

Accordingly, we affirm the order of the Commonwealth Court, which reversed the WCJ's reinstatement of Claimant's benefits after March 9, 1994, although we do so on a different basis. Contrary to the Commonwealth Court's determination, Claimant was "incarcerated after a conviction" subsequent to March 9, 1994 when Claimant was serving probation with the condition of involuntary commitment to NSH. We further affirm the Commonwealth Court's decision to deny Employer any credit for benefits paid during August 31, 1993–March 9, 1994.

Justice SAYLOR files a dissenting opinion.

SAYLOR, Justice, dissenting opinion.

While confinement in a mental health facility, an available form of intermediate punishment under the Sentencing Code, *see* 42 Pa.C.S. § 9763(b)(5), may constitute the type of incarceration warranting a suspension of benefits under Section 306(a)(2) of the Workers' Compensation Act,[1] in my view, the record in this case, in its present state, does not support such a determination. Significantly, in imposing the judgment of sentence upon Claimant, the trial court did not expressly invoke Section 9763. Rather, in addition to sentencing Claimant to five years of probation, the court set forth the commitment in a section devoted to remarks, citing to Sections 304 and 305 of the Mental Health Procedures Act, 50 P.S. §§ 7303, 7304, the civil confinement provisions, while making no mention of the sections of that enactment governing individuals

1. Indeed, Section 401(b) of the Mental Health Procedures Act provides that a period of involuntary treatment "shall be credited as time served on account of any sentence to be imposed on pending charges or any unexpired term of imprisonment," 50 P.S. § 7401(b), thus equating a commitment with incarceration in certain circumstances.

charged with a crime or serving a sentence. *See* 50 P.S. §§ 7401–7408.

Section 306(a)(2) of the Workers' Compensation Act, which precludes a claimant from receiving benefits while incarcerated following a conviction, *see* 77 P.S. § 511(2), constitutes a specific exclusion of benefits. Consistent with the humanitarian purposes to be achieved through the workers' compensation scheme, such exclusion should be narrowly construed, with "incarceration" being defined according to its ordinary and approved usage.[2] Where, as here, the criminal nature of a commitment is questionable, the self-executing provision of Section 306(a)(2) should not be read so broadly as to effect a suspension of benefits without consideration of the underlying circumstances, particularly in light of Claimant's assertion that the mental condition is work-related.[3]

2. While I recognize that the Court has previously indicated that inpatient custodial rehabilitation may constitute imprisonment for purposes of affording credit for time served related to offenses under the Vehicle Code, that holding was based primarily upon consideration of the purposes sought to be obtained through the mandatory sentencing scheme—rehabilitation, deterrence, and punishment—which were served by the particular rehabilitation program in that case. *See Commonwealth v. Conahan*, 527 Pa. 199, 203–04, 589 A.2d 1107, 1109 (1991). Significantly, the underlying purposes served by civil commitment can be quite different. *See* 50 P.S. § 7102 (emphasizing, *inter alia*, the goal of ensuring availability of adequate treatment for mentally ill individuals to protect those individuals and others). Accordingly, and considering the legislative intent of the workers' compensation scheme, including its humanitarian objectives and the narrow construction of borderline interpretations against the cessation of benefits, *see Sporio v. WCAB (Songer Constr. Co.)*, 553 Pa. 44, 50, 717 A.2d 525, 527 (1998), in my view ᵣ ᵣnore restrictive construction of the term incarceration is warranted ᵣᵣ the civil confinement context.

3. This is not to say that an employer is obligated to pay benefits *ad infinitum* for an institutionalized claimant. Rather, if an employer can demonstrate that the claimant's loss of earnings is no longer attributable to the work injury, and that work would be available but for an unrelated mental illness, benefits may be appropriately suspended. *See generally Kachinski v. WCAB (Vepco Constr. Co.)*, 516 Pa. 240, 251, 532 A.2d 374, 379 (1987). Although a connection between Claimant's back injury and mental illness may seem unlikely, Employer evidently did not proceed under this theory of suspension. That being the case, and in the absence of pertinent findings of fact and conclusions of law by the WCJ, I do not view it as the role of an appellate court to make such

Accordingly, I would reverse that portion of the Commonwealth Court's order that reversed the reinstatement of Claimant's benefits as of March 10, 1994.

a determination. Thus, I do not believe that Employer's entitlement to a suspension of benefits should be resolved at this time.