605 A.2d 1297

**Lois Ann MURPHY, Petitioner,**

v.

**WORKMEN'S COMPENSATION APPEAL BOARD (AMES DEPARTMENT STORE), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Dec. 6, 1991.

Decided March 13, 1992.

evidence necessitating a remand. No similar evidentiary flaw exists here. *See* Department's Exhibit # 3.

Ronald L. Calhoon, for petitioner.

Alexander J. Palutis, for respondent.

Before COLINS and PELLEGRINI, JJ., and BARBIERI, Senior Judge.

BARBIERI, Senior Judge.

Lois Ann Murphy (Murphy) petitions for review of the May 29, 1991 order of the Workmen's Compensation Appeal Board (Board) which affirmed a referee's decision granting Ames Department Store's (Employer's) petition to terminate benefits. We reverse the Board's order and remand for entry of an order on the issue of reimbursement for Murphy's repayment of overpaid compensation benefits to Employer's insurance carrier due to her return to work.

On December 30, 1987, Murphy sustained a work-related injury to her back and received weekly disability benefits in the amount of $180.50 pursuant to a February 8, 1988 notice of compensation payable. Thereafter, Employer filed a petition to modify benefits as of September 26, 1988 on the basis of job availability. On April 5, 1990, Employer amended that petition to include termination.

Hearings were held in this matter on January 17, 1989, June 15, 1989, August 10, 1989 and April 5, 1990. As a result, the referee made the following relevant findings of fact:

3. The defendant [Employer] presented the deposition of Dr. Danyo [a board certified orthopedic surgeon]. Dr. Danyo had examined the claimant [Murphy] on one occasion on June 17, 1988.

4. Dr. Danyo explained that he had the history and conducted a physical examination as well as tested the claimant's physical capacity. He did not think she was capable of heavy work but did present a physical capacity test which released her up to the medium category.

5. Taking his deposition as a whole, Dr. Danyo gave an opinion that the claimant had been injured but had recovered and was able to return to her original job at the time of her injury without restriction.

. . . .

11. The store manager, Daniel Gemmer, indicates the claimant worked at Ames. Her duties included putting

out merchandise, helping set ads, working on freight, setting planograms, helping customers, doing some register work, and keeping a department neat. Weights could be from ounces to twenty pounds. There are many small items. There are some boxed items.

12. The manager indicated [that] where the claimant worked weights would be between twenty to fifty pounds. There is a large kit which weighs one hundred ten pounds. It is on a pallet.

13. The manager noted that there is help available for lifting. Much of the stocking is done by the night crew.

. . . .

24. The claimant indicated that she had been earning $106.87 from Hughes, Albright for fourteen weeks. Because of an overpayment of past compensation due to her return to work, she had repaid the carrier for overpayment as set forth in her exhibits.

Findings of Fact Nos. 3–5, 11–13 and 24.

The referee found the testimony of Dr. Danyo, that Murphy had recovered to her pre-injury state, to be credible. Further, the referee found the testimony of Mr. Gemmer, that Murphy's job with Employer did not fall within the heavy category, to be credible. Thus, the referee concluded that, even though "the claimant affirmatively established that work referred was not within her capabilities,"[1] Employer sustained its burden for a termination of benefits due to its showing that Murphy could return to her pre-injury position without restrictions.

The Board affirmed the referee's order and noted that he has the prerogative of rejecting or accepting the testimony of a medical expert, in whole or in part. Further, the Board declined to remand the case on the basis of Murphy's contention that her counsel was ineffective. The Board stated that Murphy was able to submit a substantial

1. Conclusion of Law No. 2. On the basis of that conclusion, the referee awarded costs to Murphy for successfully opposing Employer's petition to modify her benefits.

amount of medical evidence into the record as to her condition and that there was no basis therein to support a finding of ineffective counsel.

■ The issue before us is whether substantial competent evidence exists to support the referee's finding that Murphy had fully recovered from her work-related injury. We note that our scope of review as to it is limited to determining whether findings of fact are supported by substantial evidence, an error of law was committed or whether constitutional rights were violated. *Russell v. Workmen's Compensation Appeal Board (Volkswagen of America),* 121 Pa.Commonwealth Ct. 436, 550 A.2d 1364 (1988).

We have held the following with regard to termination petitions:

A termination of benefits may not be based only upon a finding that a claimant could return to work. A termination may be based only upon a finding supported by substantial evidence that the disability ceased. *Blair v. Workmen's Compensation Appeal Board (Fullington Bus Co.),* 80 Pa.Commonwealth Ct. 459, 471 A.2d 1289 (1984). Finding that the claimant was able to return to work without more will not support an order to terminate benefits. *Lord v. Workmen's Compensation Appeal Board (Sealy Spring Corp.),* 38 Pa.Commonwealth Ct. 626, 395 A.2d 598 (1978). Unequivocal medical evidence establishing that a claimant is still partially disabled but can return to work, supports a suspension of benefits. *Buckley v. Workmen's Compensation Appeal Board (Corbo's AM PM Mini Market),* 109 Pa.Commonwealth Ct. 64, 530 A.2d 530 (1987).

*Brown v. Workmen's Compensation Appeal Board (City of Pittsburgh),* 134 Pa.Commonwealth Ct. 31, 35, 578 A.2d 69, 71 (1990), *petition for allowance of appeal denied,* 527 Pa. 652, 593 A.2d 423 (1991).

■ Here, the referee granted Employer's petition for termination of benefits on the basis of Dr. Danyo's testimo-

ny that Murphy could return to work without restrictions. However, after examining Dr. Danyo's testimony as a whole, we note that he never stated that Murphy's disability had ceased. In fact, Dr. Danyo stated the following regarding his examination of Murphy:

I find nothing objective in the low back examination except the three trigger points that were enumerated above. These, too, are not disabling. Ms. Murphy mentions sciatica occurring after a few hours, that is not the way things work with sciatica. Her performance on the ERG analysis[2] is *functional* as well.

. . . .

In my opinion, *she has a marked functional problem but this does not preclude her from returning to work in the previous job. . . . Overall, I cannot really ascribe any measurable disability to her condition; rather the overwhelming problem is not in the shoulder, neck, or low back as far as return to work. It is the functional aspect.*

It was interesting to note that upon conclusion of the test that there is pain to the extent that she had to rest. That is just not possible. In well over 600 tests that we have done which incorporated the whole body type no one has had to do that. That, too, is a *functional aspect.* The whole right side of her body went numb, she relates. That is a *functional element.*

I went over Ms. Murphy again and she mentions she was set back '2–3 months.' There is no weakness. There is positive hip abduction and hip rotation tests and this is *functional.*

2. The ERG analysis is an "isometric static whole body test, and that means that an individual comes up to a set of fixed handles; and those handles can be positioned near the floor or above the head. And the patient is asked to either lift, push or pull on those handles. The handles do not move, but the amount of force that is exerted on the handles is determinable and a force plate going to a computer is the method by which the amounts of force, in pounds, is printed so we can tell what the person does isometrically in that position." Danyo Deposition at 6–7.

Exhibit 1 to Danyo Deposition at 4 (emphasis and footnote added).

We conclude that Dr. Danyo's testimony did not unequivocally establish that all of Murphy's disability had ceased. He testified that, even though Murphy can return to work, a marked functional problem remains as a result of her work-related injury. Because Dr. Danyo raised the possibility of Murphy having a continuing compensable disability, we conclude that Employer failed to sustain its burden of proof. *County of Dauphin v. Workmen's Compensation Appeal Board (Davis)*, 136 Pa.Commonwealth Ct. 140, 582 A.2d 434 (1990), *petition for allowance of appeal denied*, 528 Pa. 614, 596 A.2d 160 (1991); *Brown*. Accordingly, the Board erred in affirming the referee's decision granting Employer's termination petition.

■ Finally, we must point out that the referee found that "[b]ecause of an overpayment of past compensation due to her [Murphy's] return to work, she had repaid the carrier for the overpayment as set forth in her exhibits." Finding of Fact No. 24. Further, the referee concluded that "[w]hen there is an overpayment of compensation[,] relief must be obtained against the supersedeas fund. There is no authority to get reimbursement from the claimant." Conclusion of Law No. 3. We agree. Section 443 of The Pennsylvania Workmen's Compensation Act, Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 999; *W & L Sales Co. v. Workmen's Compensation Appeal Board (Drake)*, 123 Pa.Commonwealth Ct. 158, 552 A.2d 1177 (1989), *aff'd without opinion*, 524 Pa. 591, 574 A.2d 603 (1990).

■ Despite the referee's acknowledgement of Murphy's unnecessary repayment, however, he declined to take action to compensate her for that amount. We note that Employer never sought a supersedeas here.[3] Merely ap-

---

3. At the April 5, 1990 hearing, Employer attempted to persuade the then unrepresented Murphy to sign a supplemental agreement whereby she would pay fifty dollars per week to the insurance carrier until the balance of the overpayment was satisfied. It is unclear to us why

pealing the referee's decision does not substitute for a supersedeas. *M.D.S. Laboratories v. Workmen's Compensation Appeal Board (Munchinski)*, 125 Pa.Commonwealth Ct. 460, 558 A.2d 148 (1989). Thus, we remand for a computation of the amount Murphy paid to the insurance carrier so that the referee can order that it be reimbursed to Murphy. Further, the reimbursed amount must include the interest earned by the insurance carrier during the time it had the use thereof.[4] *Mathies Coal Company v. Workmen's Compensation Appeal Board*, 40 Pa.Commonwealth Ct. 120, 399 A.2d 790 (1979).

Accordingly, we reverse the Board's order and remand for entry. of an order on the issue of reimbursement to Murphy due to her payment of overpaid compensation benefits to Employer's insurance carrier.

## ORDER

AND NOW, this 13th day of March, 1992, the order of the Workmen's Compensation Appeal Board which affirmed the referee's decision granting Ames Department Store's petition to terminate Lois Ann Murphy's compensation benefits as of June 17, 1988 is hereby reversed and the above-captioned case is remanded for entry of an order on the issue of reimbursement to Murphy for her payment of overpaid compensation benefits and for the interest Ames Department Store's insurance carrier gained during the time it had the use thereof.

Jurisdiction relinquished.

Employer did not seek a supersedeas, the proper method of redress for overpayment to a claimant.

**4.** If Murphy, for example, made several payments to the insurance carrier, then the amount of interest due must be calculated from the respective dates the insurance carrier received each payment.