**Eric KIEBLER, Petitioner,**

v.

**WORKERS' COMPENSATION APPEAL BOARD (SPECIALTY TIRE OF AMERICA), Respondent.**

Commonwealth Court of Pennsylvania.

Argued June 16, 1999.

Decided Sept. 17, 1999.

James J. Conte, Latrobe, for petitioner.

Timothy G. Sullivan, Pittsburgh, for respondent.

Before COLINS, President Judge, and DOYLE, J., McGINLEY, J., PELLEGRINI, J., KELLEY, J., FLAHERTY, J. and LEADBETTER, J.

DOYLE, Judge.

Eric Kiebler (Claimant) appeals from an order of the Workers' Compensation Appeal Board (Board) affirming and modifying the decision of a Workers' Compensation Judge (WCJ), which had granted the review petition filed by Specialty Tire of America (Employer) and allowed overpayments made to Claimant to be deducted from his future compensation benefits.

On May 24, 1995, Claimant suffered a work-related injury while in the course of his employment with Employer.[1] A notice of compensation payable (NCP) was issued by Employer on October 3, 1995, providing Claimant a weekly benefit rate of $451.85 for total disability based upon an average weekly wage of $677.77. On February 29, 1996, nine months after the Claimant's injury and five months after the NCP was filed, Employer filed a review petition pursuant to Section 413 of the Workers' Compensation Act (Act)[2] alleging that Claimant was being overpaid compensation benefits because it had miscalculated his average weekly wage. Specifically, Employer alleged that it should have allocated Claimant's 1994 yearly bonus of $1,600 over the entire year (1994) rather than to the quarter in which it was paid (Sept.-Dec. 1994). Because it had not allocated the bonus properly, Employer alleged that Claimant had received an overpayment of $50.85 per week and sought to have the NCP amended to 1) reflect the proper allocation of the bonus to Claimant's benefits; 2) set forth an average weekly wage of $601.50 and a weekly compensation rate of $401; and 3) recoup the overpayment from Claimant. Claimant filed a timely answer to Employer's petition denying the allegation.

At the hearing before the WCJ, Employer submitted the testimony of Linda J. Steel (Steel), its manager of personnel administration. She testified that Claimant received a $1,600 bonus on November 16, 1994, which was the equivalent of four-weeks pay. She also stated that every worker who had completed at least one year of service by the end of the year was paid a bonus that was calculated according to their hourly wage, and that the bonuses were based on Employer's performance over the entire year and not tied to an individual worker's performance. Steel explained that Employer referred to the bonuses as the "year-end bonus[es]."

---

1. Claimant's injuries were described as a right facial laceration, a left posterior column acetabluar fracture, abdominal trauma, pubis fracture, ilium fracture and second degree burns of the left lower leg.

2. Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 771. That section provides:
 A workers' compensation judge may, at any time, review and modify or set aside a notice of compensation payable and an original or supplemental agreement or upon petition filed by either party with the department, or in the course of the proceedings under any petition pending before such workers' compensation judge, if it be proved that such notice of compensation payable or agreement was in any material respect incorrect.

Claimant's testimony was in agreement with Steel's with the exception that he believed the bonus was a "Christmas" or "holiday" bonus.[3]

Because the WCJ found that the parties agreed that Claimant had to work for Employer for the entire year in order to receive a bonus, the WCJ concluded that regardless of the reason Employer gave the bonus, it was based upon employment over a one-year period and was part of Claimant's *yearly* wages for his work. As such, the WCJ determined that Claimant's bonus should have been allocated over the entire year before his injury rather than applied only to the quarter in which it was paid. He then granted Employer's review petition and ordered that the NCP be modified to reflect an average weekly wage of $601.50 rather than $677.77, and a weekly rate of $401.00 rather than $451.85 for total disability. The WCJ also determined that Employer was required to apply to the Supersedeas Fund[4] for reimbursement of its overpayment rather than deduct it from Claimant's future compensation payments.

Both parties filed an appeal to the Board. Claimant argued that the bonus was a Christmas bonus and should only have been credited to the quarter in which it was paid, while Employer argued that the overpayments were recoupable from Claimant because they resulted in his unjust enrichment. The Board affirmed the WCJ's decision that the bonus was an annual bonus because it had to be "earned" over the course of the preceding year. However, it modified that portion of the WCJ's decision requiring Employer to seek recoupment from the Supersedeas Fund, concluding instead that Employer was entitled to recoup its total overpayment of $4,678.20 from Claimant by deducting $50.85 from each of his benefit checks for 92 weeks. This appeal by Claimant followed.[5]

Claimant contends that the WCJ erred in determining that the bonus he received was not a Christmas bonus, and that the Board erred in modifying the WCJ's decision and determining that Employer was entitled to recoupment from Claimant for any overpayment made.

Regarding the status of Claimant's bonus, our Supreme Court's decision in *Lane Enterprises, Inc. v. Workmen's Compensation Appeal Board (Patton)*, 537 Pa. 426, 644 A.2d 726 (1994), is controlling. In *Lane*, claimant, who was a welder, received an annual $2,750 bonus which was prorated over an entire year when his weekly wage and compensation benefits were calculated. The bonus was based upon profits and the performance of the company as well as upon the performance of the employees. The claimant was seeking to have the bonus applied only to the quarter in which it was actually paid. In holding that the bonus should be prorated over the entire year, our Supreme Court held that there was no dispute that the bonus was calculated on the basis of *yearly* performance. The Court then went on to state:

> Although technically claimant's bonus is not a yearly wage, *it is monies earned*

---

3. Claimant further testified that there were years when he did not receive a bonus because "they [Employer] just didn't have it." (Notes of Testimony, 7–2–96, at 11–12.)

4. The Supersedeas Fund is a fund from which payments can be recouped by employers/insurers who pay compensation to claimants after it is subsequently determined that the claimants are not entitled to be paid those compensation benefits. *See* Section 443(a) and (b) of the Act, 77 P.S. § 999(a) and (b).

5. Our standard of review is limited to determining whether constitutional rights were violated, whether an error of law was committed or whether the necessary findings of fact are supported by substantial evidence. *Bi–Thor Electric, Inc. v. Workers' Compensation Appeal Board (Thornton)*, 702 A.2d 1145 (Pa. Cmwlth.1997). Substantial evidence has been defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Moore v. Workmen's Compensation Appeal Board (Reading Paperboard Corp.)*, 539 Pa. 333, 652 A.2d 802 (1995).

*over a year's time and paid in one lump sum.* In that respect, claimant's bonus is very similar to a yearly wage. In those instances when a claimant receives a yearly wage, the legislature has indicated that that yearly wage must be prorated over fifty-two weeks. No rational reason has been presented to treat claimant's bonus any differently. (Emphasis added.)

*Id.* at 431, 644 A.2d at 728–729. The Court reasoned that, "[i]f a bonus based on the overall success of the business over a prior year is 'earned' for purposes of entitlement of compensation, why should that bonus not be prorated over that prior year?" *Id.*[6]

■ Although Claimant argues that *Lane* has no application because, in that case, the bonus was calculated partly on the basis of the employees' performance as well as the company's performance and, here, it was not tied to personal performance, the Court's decision in *Lane* was based on the bonus being earned over a year's time although paid in one lump sum.[7] The emphasis was not on the basis for the bonus being given, but on the time period when it had been earned. In this case, both parties agreed that an employee was required to have worked for an entire year for Employer in order to receive the bonus, and even one day shy of a full year would disqualify any employee from receiving the bonus. Because *Lane* supports a holding that a bonus should be prorated

as wages over an entire year based on the time in which it is earned as opposed to the reason it is given, despite Claimant's argument that his bonus was, in effect, a Christmas gift, the WCJ did not err in concluding that Claimant's bonus should have been allocated over an entire year rather than in the quarter in which it was received.

■ Claimant also argues that the Board erred in holding that Employer could seek recoupment from him out of his future benefit payments rather than from the Supersedeas Fund. The Board, in its opinion, properly rejected this argument when it stated:

> With regard to Defendant's Appeal, Defendant seeks to recoup the overpayment directly from Claimant rather than receiving reimbursement from the Supersedeas Fund. One of the few circumstances when an employer is permitted to recoup directly from the claimant, rather than through the Supersedeas Fund, is where the employer has paid compensation that is due and a credit is allowed to prevent a double recovery.

(Board's opinion at 6.) Considering that Employer is seeking a credit to prevent Claimant from recovering an erroneous overpayment of compensation, this case presents one of those unusual circumstances where an Employer may recoup directly from Claimant. Therefore, Em-

---

6. *See also Eljer Industries v. Workmen's Compensation Appeal Board (Johnson)*, 670 A.2d 203 (Pa.Cmwlth.1996), where this Court relied on the reasoning in *Lane* and held that when computing a claimant's average weekly wage for benefit purposes, vacation and holiday pay that is paid in a lump sum at a time other than when the holiday actually occurs or when the vacation is actually taken, should be prorated throughout the period when such compensation is actually earned. *Accord Exide Corp. v. Workmen's Compensation Appeal Board (Kamenas)*, 653 A.2d 50 (Pa.Cmwlth. 1994).

7. Nonetheless, in *Lane,* the referee specifically found that the bonus was based upon claim-

ant's performance *and profits.* While Claimant's individual job performance in this case was not the reason he received a bonus, Steel testified that the bonus was given based on the company's performance:

Q. Do you know how the number of weeks under the bonus is calculated or determined by your company?
A. I don't know the exact calculation it's based on, company performance.
Q. Company performance over the fourth quarter of that year?
A. It's based on company performance for the entire year.

(Deposition of Linda Steel at 11–12; Reproduced Record at 26a–27a.)

ployer was not required to apply to the Supersedeas Fund.[8]

As to the propriety of allowing an employer to recoup overpayments of compensation paid to a claimant in error as the result of the employer's miscalculation, this Court approved such a recoupment in *Fahringer, McCarty & Grey, Inc. v. Workmen's Compensation Appeal Board (Green)*, 107 Pa.Cmwlth. 597, 529 A.2d 56 (1987). In *Fahringer*, the employer erroneously overpaid the claimant $18,320.07 as a result of miscalculating his average weekly wage. We observed that prior case law had recognized in limited circumstances the equitable principle of unjust enrichment in workers' compensation law, *General v. E. Roseman Co.*, 21 Pa.Cmwlth. 72, 343 A.2d 683 (1975), and concluded that restitution was within the authority of the Board to order.[9] Therefore, because the claimant was not entitled to receive the overpayment of compensation benefits, we allowed recoupment to the employer directly from the claimant on the theory of unjust enrichment, directing that the Board deduct a just but moderately reasonable amount from the claimant's future benefit checks. *Accord, Fowler v. Workmen's Compensation Appeal Board*, 38 Pa. Cmwlth. 503, 393 A.2d 1300 (1978) (WCJ has the authority, where a mathematical error results in an overpayment to the claimant, to award the employer a credit for the overpayment).

Therefore, following *Fahringer*, we hold that the Board correctly determined that Employer was entitled to recoup its total overpayment from Claimant.

Nor is there any validity to the argument that *Fahringer* has been abrogated by our Supreme Court's recent decision in *Phillips v. Workers' Compensation Appeal Board (Century Steel)*, 554 Pa. 504, 721 A.2d 1091 (1999), in which the Supreme Court disallowed the assessment of attorney's fees against a claimant, because such an assessment was not specifically provided for in the Act.

In *Phillips*, the Supreme Court held that there was no statutory authority for

---

8. We note, however, that the plain language of the Act also permits an employer to apply to the Supersedeas Fund to recover compensation erroneously overpaid to a claimant.

 Section 443 of the Act, 77 P.S. § 999, provides that "in *any* case in which a supersedeas has·been requested and denied *under the provisions of Section 413* [of the Act] ...," and monies paid to a claimant are later determined not to have been payable, the employer may seek reimbursement from the Fund. As we will explain later in this opinion, Section 413 of the Act, 77 P.S. § 771, is statutory authority for a WCJ to correct an NCP or agreement under which a claimant is being overpaid. Hence, we believe that an employer may apply for a supersedeas pending the resolution of a petition filed under Section 413 to stop an overpayment of compensation, and, where that petition is denied and the compensation is ultimately found not to have been payable, apply to the Supersedeas Fund for relief. *See W & L Sales Co. v. Workmen's Compensation Appeal Board (Drake)*, 123 Pa. Cmwlth. 158, 552 A.2d 1177 (1989), *aff'd without opinion*, 524 Pa. 591, 574 A.2d 603 (1990) (where an employee, unbeknownst to the employer, had returned to work and was overpaid compensation, the employer, whose supersedeas request had been denied, had a remedy in the Supersedeas Fund, rather than in recovering the overpayment from claimant's future benefit checks).

 Further, because an employer may only recover from the Supersedeas Fund monies improperly paid to a claimant after the date of its application for a supersedeas, *Department of Labor and Industry v. Workmen's Compensation Appeal Board*, 58 Pa.Cmwlth. 413, 427 A.2d 1277 (1981), we believe that it may be possible under the Act for an employer to apply to the Fund to recover monies overpaid *after* the filing of the supersedeas petition *and* to seek a credit directly from the claimant for monies paid *before* employer sought a supersedeas.

9. We further observed in *Fahringer* that, while the Board has the authority to exercise equitable principles, that power was not unlimited:

 The doctrine of unjust enrichment is an equitable one; the Board, however, does not have its roots in equity. While we do not believe that this fact precludes the Board from employing certain equitable principles, its use of such principles must be restricted in light of its statutory constraints.

 *Id.* 529 A.2d at 59.

an employer to recover attorney's fees from a claimant for a frivolous appeal. In doing so, the Court referred to Section 440 of the Act, 77 P.S. § 996, which provides as follows:

> In any contested case where the insurer has contested liability in whole or in part, including contested cases involving petitions to terminate, reinstate, increase, reduce or otherwise modify compensation awards, agreements or other payment arrangements or to set aside final receipts, *the employe or his dependent*, as the case may be, in whose favor the matter at issue has been finally determined in whole or in part shall be awarded, in addition to the award for compensation, a reasonable sum for the costs incurred for attorney's fee, witnesses, necessary medical examination, and the value of unreimbursed lost time to attend the proceedings: Provided, That the cost for attorney's fees may be excluded when a reasonable basis for the contest has been established by the employer or the insurer.

Citing *Callahan v. Workmen's Compensation Appeal Board (Bethlehem Steel Corp.)*, 132 Pa.Cmwlth. 47, 571 A.2d 1108, 1111 n. 9 (1990), the *Phillips* Court held that, "[e]mployers are no more entitled to the award of costs and counsel fees than are insurers" and that "the clear intent of Section 440 of the Act is to protect Claimants from the costs of litigation, but not to provide comparable protection for employers...." *Phillips*, 554 Pa. at 509, 510, 721 A.2d at 1094.

However, our decision in *Fahringer* directing a claimant to pay restitution to an employer for an overpayment of compensation benefits is **specifically** supported by Section 413 of the Act, 77 P.S. § 771,which provides in relevant part as follows:

> A workers' compensation judge *may*, at any time, *review and modify or set aside a notice of compensation payable* and an original or supplemental agreement or upon petition filed by *either* **party** with the department, or in the course of the proceedings under any petition pending before such workers' compensation judge, *if it be proved that such notice of compensation payable or agreement was in any material respect incorrect.* (Emphasis added.)

Comparing Section 413 and Section 440 of the Act, we conclude that *Phillips* is inapplicable here.

 While Section 440 of the Act provides benefits to claimants only, Section 413 gives a statutory right to *either party* to seek review of a notice of compensation or agreement. The term party is defined in workers' compensation law as including, among others, claimants, employers and insurance carriers. *See Heraeus Electro Nite Co. v. Workmen's Compensation Appeal Board (Ulrich)*, 697 A.2d 603 (Pa. Cmwlth.1997), *appeal dismissed as improvidently granted*, 554 Pa. 512, 721 A.2d 1095 (1999); Special Rules of Administrative Practice and Procedure Before Referees, 34 Pa.Code 131.5. Hence, unlike Section 440, Section 413 of the Act is plainly intended to operate on behalf of both employers and claimants and there is nothing in Section 413 that would restrict an employer from seeking reimbursement from the Supersedeas Fund only.

Where there has been an underpayment by an employer, Section 413 provides a comparable remedy for a claimant to recover monies from the employer that should have been paid but never were. *See Drozd v. Workmen's Compensation Appeal Board (The Lion, Inc.)*, 86 Pa. Cmwlth. 364, 485 A.2d 96 (1984) (where a mathematical error caused a claimant's benefits to be underpaid, this Court determined that the claimant was entitled to receive the difference between the underpayment and the amount to which he was entitled from employer).

 We also note that the purpose of Section 440 and the purpose of Section 413 are quite different. In *Phillips* the Supreme Court stated that Section 440 is intended to deter employers from engag-

ing in unreasonable contests and to ensure that litigation costs do not devour a claimant's benefits. In contrast, the clear purpose of Section 413 is to give WCJs the power to update, correct and resolve errors and mistakes in workers' compensation claims with regard to *any* party involved in a case.

While this Court in *Fahringer* applied equitable principles to hold that an employer may recapture an overpayment made to a claimant,[10] it was not a unique application of those principles in workers' compensation law. We similarly sanctioned the use of equitable remedies and defenses in workers' compensation proceedings, despite the absence of any provision in the Act specifically authorizing such a remedy, in *Roadway Express, Inc. v. Workmen's Compensation Appeal Board (Allen)*, 152 Pa.Cmwlth. 318, 618 A.2d 1224 (1992) (doctrine of laches applies in workers' compensation proceedings).[11]

Accordingly, Board's decision is affirmed.

### ORDER

**NOW**, September 17, 1999, the order of the Workers' Compensation Appeal Board in the above-caption matter is affirmed.

Dissenting opinion by Judge PELLEGRINI joined by Judge KELLEY.

PELLEGRINI, Judge, dissenting.

I respectfully dissent because I believe that to imply unjust enrichment against a claimant is against the legislative scheme embodied in the Workers' Compensation Act. In any event, even if equitable principles were implied, the doctrine of equitable estoppel should be applied, not unjust enrichment.

After Eric Kiebler (Claimant) suffered a work-related injury, Specialty Tire of America (Employer) issued a Notice of Compensation Payable (NCP) providing a weekly benefit rate of $451.85 for total disability based upon an average weekly wage of $677.77. Because it had allocated Claimant's 1994 yearly bonus of $1,600 over the entire year (1994) rather than to the quarter in which it was paid (Sept.-Dec. 1994) in calculating Claimant's average weekly wage, Employer filed a petition to modify benefits pursuant to Section 413 of the Workers' Compensation Act (Act).[1] It alleged that Claimant's correct average

---

**10.** Section 413 does not expressly provide that a WCJ or the Board has equitable powers and the Act as a whole is silent on the question of equitable remedies. Section 413, however, gives a WCJ broad authority to modify a notice of compensation payable, award or agreement, and a WCJ may thereby reach the question of whether a party was erroneously overpaid or underpaid. Because Section 413 gives a WCJ the power to decide these difficult problems, which often may be resolved only by disgorging funds from the party who has been unjustly enriched, we believe that the authority to utilize the equitable remedy of restitution is implied in the statute. *See Department of Environmental Resources v. Butler County Mushroom Farm*, 499 Pa. 509, 454 A.2d 1 (1982) (where a particular remedy is not explicitly provided for in a statute, the power to exercise the remedy may nonetheless be implied from the language in the Act); *B.G. Balmer & Co. v. Insurance Commissioner*, 114 Pa.Cmwlth. 239, 538 A.2d 968 (1988) (citing *Fahringer*, the Court held that the authority of the Insurance Commissioner to order restitution was implied in statute).

**11.** Furthermore, in addition to the equitable and administrative remedies available under the Act, where a claimant fraudulently conceals the simultaneous receipt of compensation and wages, an insurer or employer may file an equity action in a common pleas court to recover improperly paid benefits. *See Liparota v. State Workmen's Insurance Fund*, 722 A.2d 253 (Pa.Cmwlth.1999).

**1.** Act of June 2, 1915, 736, *as amended*, 77 P.S. § 771. That section provides in relevant part:

A workers' compensation judge may, at any time, review and modify or set aside a notice of compensation payable and an original or supplemental agreement or upon petition filed by either party with the department, or in the course of the proceedings under any petition pending before such workers' compensation judge, if it be proved that such notice of compensation payable or agreement was in any material respect incorrect.

weekly wage was $601.50, the correct weekly compensation rate was $401, and there was an overpayment and recoupment of $4,678.20 based on the overpayment from Claimant of $50.85 per week for the 92 weeks he received the incorrect amount.

The majority, relying on *Fahringer, McCarty & Grey, Inc. v. Workmen's Compensation Appeal Board (Green)*, 107 Pa. Cmwlth. 597, 529 A.2d 56 (1987), holds that because under Section 413 of the Act, a WCJ may, at any time, set aside a notice of compensation payable if it is proven that such notice of compensation payable or agreement was in any material respect incorrect, attendant with that power is the power to order recoupment on the basis of unjust enrichment. While Section 413 of the Act authorizes the setting aside of an NCP based on a mistake of material fact, nothing in that provision or any other provision of the Act, as the majority acknowledges, authorizes an employer to obtain recoupment for overpayment directly from a claimant. By agreeing with *Fahringer* and allowing recoupment against claimants who innocently relied on their Employer's negligent miscalculation, the majority is saying such power is implied in Section 413 of the Act.

While I believe the majority's outcome is in accord with our decision in *Fahringer*, I would overrule that case because I disagree that the equitable power of recoupment can be implied in Section 413 of the Act when there is no provision anywhere in the Act that allows recoupment where the claimant merely received compensation that was miscalculated by the employer because it goes against the legislative scheme embodied in the Workers' Compensation Act. If the General Assembly wanted to allow recoupment from an innocent claimant, it would have said so.

When a WCJ grants a claim petition that later is reversed because the injury is not work-related, or where an employer has accepted an injury but challenges the medical treatment as being unrelated to the work-injury, the General Assembly did not provide for recoupment from the claimant or the medical provider, even though each could have received thousands or hundreds of thousands of dollars in payment found not to be work-related. Instead, it provided that recoupment be made from the Supersedeas Fund, a Fund funded by employers or their carriers.

Even if equitable powers are implied, the equitable doctrine that should be applied is the doctrine of equitable estoppel. Equitable estoppel applies where a party negligently misrepresents material facts while knowing or having reason to know that another party will justifiably rely on the misrepresentation to its detriment, and the other party does so rely. *Edgewater Steel Co. v. Workers' Compensation Appeal Board (Beers)*, 719 A.2d 812 (Pa. Cmwlth.1998); *Sharon Steel Corporation v. Workers' Compensation Appeal Board (Myers)*, 670 A.2d 1194, 1199 (Pa.Cmwlth.), *petition for allowance of appeal denied*, 544 Pa. 679, 678 A.2d 368 (1996).[2] An employer's computation of weekly average wages falls within that criteria because that computation is generally relied upon by a claimant in determining what he or she has available to spend, especially when the employer has the payroll records and knows how to allocate bonuses, accumulated vacation and such to the relevant pay quarter. *Fahringer*, however, adopted a blanket rule that no matter the depth of a claimant's reliance or the detriment that it would cause to that person's ability to care for him or herself or his or her family,[3] a

---

**2.** Whether the facts of a case give rise to the application of equitable estoppel is a question of law that may be addressed by this Court on appeal. *Walker v. Workmen's Compensation Appeal Board (Sherbren Manufacturing)*, 656 A.2d 164 (Pa.Cmwlth.), *petition for allowance*

*of appeal denied*, 542 Pa. 638, 665 A.2d 472 (1995).

**3.** In *Fahringer*, we reversed the Referee and the Board which denied recoupment based on equitable estoppel and allowed an employer to recoup $18,320.07. By allowing recoup-

workers' compensation claimant could never justifiably rely upon statements of an opposing party as to what his or her own weekly wages were for computation purposes, making equitable estoppel inapplicable.

In making such a blanket rule, *Fahringer* essentially takes a cynical view that the compensation system is an adversarial process and not an insurance system to aid injured workers, and that nothing that an employer says or calculations it has made can be relied upon in any way by the claimant; if the claimant does so, he or she does so at his or her own risk. Just as in *Fahringer*, while invoking equitable principles, the majority here takes the position that the doctrine of unjust enrichment prevails incongruously no matter what the competing equities are. The competing equities demand that where there is no fraudulent behavior by the claimant, the employer or its carrier bear the loss of payments made as a result of their negligent miscalculation, especially insurance carriers who are in the business of making calculations, and they are better able to bear the loss than the claimant who would have to pay the employer back out of his or her already reduced compensation payments and possibly not be able to care for the daily living needs of his or her family.

Consequently, I would overrule *Fahringer* because the General Assembly did not intend to make innocent claimants pay back compensation received as a result of employers' negligent miscalculations, and because applying the equitable doctrine of unjust enrichment in that situation is essentially inequitable. Accordingly, I dissent.

Judge KELLEY joins in this dissenting opinion.

ment where there was a miscalculation and also a termination of benefits, the majority's position could essentially force a claimant into bankruptcy.