**LISANTI PAINTING COMPANY and Donegal Companies, Petitioners**

v.

**WORKERS' COMPENSATION APPEAL BOARD (STARINCHAK), Respondent.**

**Lisanti Painting Company, Petitioner**

v.

**Workers' Compensation Appeal Board (Starinchak), Respondent.**

Commonwealth Court of Pennsylvania.

Argued Jan. 28, 2009.

Decided May 5, 2009.

---

David H. Dille, Pittsburgh, for petitioner, Lisanti Painting Company.

Anthony J. Plastino, Pittsburgh, for respondent.

BEFORE: LEADBETTER, President Judge, and McGINLEY, SMITH–RIBNER, PELLEGRINI, SIMPSON, LEAVITT and BUTLER, JJ.

OPINION BY Judge McGINLEY.

Lisanti Painting Company (Employer) petitions for review of the order of the Workers' Compensation Appeal Board

(Board) which reversed the Workers' Compensation Judge's (WCJ) suspension of benefits for Gregory Starinchak (Claimant) for a period of thirty-nine and one-seventh weeks. Employer also petitions for review of the Board's order which denied Employer's petition for rehearing/reconsideration.

Claimant sustained a work-related injury on September 21, 2004. Employer issued a Notice of Compensation Payable (NCP) on October 14, 2004, which identified Claimant's injury as a comminuted fracture of the right distal phalanx. Claimant received temporary total disability benefits pursuant to the NCP. On May 30, 2006, the parties executed a supplemental agreement which expanded Claimant's injury to include a right shoulder impingement syndrome.

On October 27, 2006, Employer petitioned to suspend benefits as of March 13, 2006, on the basis that:

Claimant refused to undergo necessary right shoulder surgery which has been advocated by at least 3 surgeons in connection with the prior work injury of 9/21/04. Claimant's refusal [sic] this reasonable medical services [sic] has, [sic] caused the Claimant to continue to have a lack of earning power and has increased incapacity. Pursuant to Section 306(f)(1)(8) 77 P.S. Section 531(8) the Judge should issue an order confirming the fact Claimant has forfeited his WC benefits.

Petition to Suspend Benefits, October 27, 2006, at 3; Reproduced Record (R.R.) at 3a.

At the hearing before the WCJ, Employer called Claimant on cross-examination. Claimant testified that his treating physician, Robert J. Donofrio, M.D., Ph.D., (Dr. Donofrio) recommended that he undergo a right shoulder operation on March 29, 2005, and on November 22, 2005. Claimant admitted that Employer's physician, Jon B. Tucker, M.D. (Dr. Tucker), recommended the same procedure on September 25, 2006. Notes of Testimony, December 5, 2006, at 10–11; R.R. at 17a–18a. Eventually, Claimant underwent surgery on December 14, 2006. Notes of Testimony, February 20, 2007, at 5; R.R. at 61a.

Employer presented the medical report of Dr. Tucker. Dr. Tucker examined Claimant in March 2006. At that time Dr. Tucker diagnosed Claimant with work-related right upper extremity disorder that carried a medical diagnosis of impingement syndrome. Dr. Tucker subsequently reviewed medical records and reiterated his diagnosis of impingement syndrome of the right shoulder. Report of Jon B. Tucker, M.D., September 25, 2006, (Dr. Tucker Report) at 1–2; R.R. at 41a–42a. Dr. Tucker recommended that Claimant have "an arthroscopic procedure that has a greater than 92 percent chance of very good to excellent results with cessation of disability after a three-month recovery. This refusal to avail himself of appropriate medical care is causing his ongoing disability." Dr. Tucker Report at 2; R.R. at 42a.

Claimant presented the medical report of Dr. Donofrio. Dr. Donofrio recommended that Claimant have an arthroscopic acromioplasty. Report of Robert J. Donofrio, M.D., Ph.D., November 21, 2006, at 1; R.R. at 35a.

The WCJ granted the suspension petition and suspended benefits for thirty-nine and one-seventh weeks commencing with the date of the circulation of the order, April 11, 2007. The WCJ made the following finding of fact and conclusions of law:

### FINDINGS OF FACT

. . . .

**10. Based upon a review of the foregoing, and a review of all the evidence of record, considered in its entirety, this adjudicator finds as fact that the**

claimant refused reasonable services of his surgeon, Dr. Donofrio. The evidence shows that claimant and his counsel were on notice as early as December 20, 2005 that arthroscopy had been recommended for the shoulder problem. In addition, Dr. Rodosky on April 27, 2005, had recommended this. Also, Dr. Tucker had recommended this in March of 2006 and September 2006. Dr. Donofrio reiterated his opinion that surgery was appropriate in a letter of November 21, 2006. Dr. Donofrio stated: 'Again, I recommend an arthroscopic acromioplasty and a good look at the rotator cuff. If indeed we find an occult tear that needs repair I told you that we will probably do a mini open repair at that time. We talked about the post operative course, needing physical therapy for two-three months; that it would probably be three months before you could do full activity including overhead activities and heavy lifting....' According to the doctor, 'I went over the risks and goals including infection, loss of motion, nerve and vessel damage, etc....' The above has been credited and adopted as fact.

This adjudicator also adopts as fact Dr. Tucker's opinion that the proposed surgery is 'appropriate medical care ... that has a greater than 92% chance of a very good to excellent result with cessation of disability after a three-month recovery. This refusal to avail himself of appropriate medical care is causing his ongoing disability.'

## CONCLUSIONS OF LAW

. . . .

2. The employer ... has met the burden of proof to demonstrate relief on its forfeiture petition....

. . . .

5. Of course, this adjudicator denied supersedeas, and supersedeas recovery is not available in this context....

Thus, there is no remedy for the employer in the present case unless there is a future credit awarded during the period of continued payment of TTD. Employer, in its articulate brief, argues that, 'Therefore, ... claimant's benefits [should] be suspended for a period of time equal to the 39–1/7 weeks period between March 16, 2006 [first Tucker IME] and December 14, 2006, when claimant [agreed] to undergo the reasonable, recommended medical treatment.' Employer seeks this suspension on a 'prospective' basis under the following reasoning: 'In case of unjust enrichment, the Commonwealth Court has permitted an employer to take a credit against a claimant's ongoing benefits to recoup money erroneously paid to the claimant.' ... The employer, in this regard, cites the two following cases; *Fahringer, McCarty & Grey v. WCAB* (Green), 107 Pa.Cmwlth. 597, 529 A.2d 56 (1987); *Kiebler v. WCAB* (Specialty Power of America), 738 A.2d 510 (Pa. Cmwlth.1999). Employer concludes: 'By making such an award, [the workers' compensation authorities] would provide the Employer with the relief to which it is entitled under the Act and the claimant would not be permitted to benefit from its [sic] decision to forego reasonable necessary medical treatment for its work injury.'

6. It is true, as cited by claimant, that an axiom of workers' compensation is that overpayments are not usually secured from the injured worker. The leading case for this proposition is *Mur-*

*phy v. WCAB* (Ames Dept. Store), 146 Pa.Cmwlth. 366, 605 A.2d 1297 (1992). However, that case is trumped at least in part by the later-filed leading case *Kiebler*. . . .

Importantly, in the present case, there is an element of willfulness on the claimant's part—a factor not present in *Kiebler*—which makes the argument for reimbursement via future credit quite strong in Mr. Starinchak's case.

Of course, an even more pervasive axiom of workers' compensation is that ambiguities in the law are, under the rule of liberal construction, to be resolved in the claimant's favor. In light of the *Fahringer* and *Kiebler* cases invoked by employer, however, the undersigned finds no true ambiguity in the law.

When all of these considerations are taken into account, along with the realization that employer has no Supersedeas Fund recovery, the undersigned concludes as a matter of law that a prospective credit is appropriate. (Emphasis in original).

WCJ's Decision, April 11, 2007, Finding of Fact No. 10 and Conclusions of Law Nos. 5–6 at 3–5; R.R. at 91a–93a.

Claimant appealed to the Board which reversed:

The WCJ has erred in awarding Defendant [Employer] a prospective credit for Claimant's refusal to undergo reasonable medical treatment. Initially, we note that cases applying the doctrine of unjust enrichment almost exclusively involve factual scenarios where a claimant receives additional compensation to which he has no arguable right under the Act and only receives these payments because of a clerical error. . . . However, Section 306(f.1)(8) does not involve clerical errors. It requires a defendant to file a suspension petition and litigate the question of whether the claimant refused reasonable medical treatment in the same manner as it would with regard to a termination petition or a suspension petition based upon a claimant's change in earning power. . . . In short, Section 306(f.1)(8) suspension petitions bear little, if any, similarities to cases where unjust enrichment has been applied. As such, we believe that suspension petitions filed under Section 306(f.1)(8) involve situations more analogous to other suspension and termination petitions, for which a defendant has no right to unjust enrichment recovery, making *Fahringer* and *Kiebler* inapplicable to this matter

. . . .

Additionally, even if unjust enrichment were the proper remedy for disputes under Section 306(f.1)(8), Defendant [Employer] delayed filing its Suspension Petition, and we do not believe it should be rewarded for that. In *Henkels & McCoy, Inc. v. WCAB (Hendrie)*, 738 A.2d 1 (Pa.Cmwlth.1999), a claimant was receiving benefits but was incarcerated from August 1993 through March 1994. Though he was not entitled to these benefits when he was incarcerated, the defendant continued to pay the claimant during his incarceration, and only requested a credit for these overpayments in 1997. The Commonwealth Court held that unjust enrichment could not be applied to these facts as the defendant 'could have avoided the need to request a credit by simply filing a [timely] suspension petition and requesting a supersedeas. . . .' . . . .

Defendant [Employer], in this case, argues that its own medical expert, Dr. Tucker, advised Claimant that his work injury required surgery on March 13, 2006, and Claimant's refusal of reasonable medical services began on this date.

However, Defendant [Employer] waited until October 27, 2006 to file its Suspension Petition. Defendant [Employer] offers no explanation for this. Accordingly, Defendant [Employer] should not be permitted to profit from its lengthy delay.... (Footnotes and citations omitted).

Board Opinion, January 7, 2008, at 6–8; R.R. at 124a–126a.

■ Employer contends[1] that the Board erred when it reversed the WCJ because the Board deprived Employer of its only means of obtaining the remedy provided by Section 306(f.1)(8) of the Workers' Compensation Act (Act)[2] by failing to apply the provisions of that section, relevant case law, and the doctrine of unjust enrichment. Employer also contends that the Board erred when it determined that Employer delayed in the filing of the suspension petition, while the Board ignored the provisions of the Act and overlooked Claimant's delay in obtaining reasonable medical treatment for his work injury. Employer also contends that the Board erred when it denied reconsideration.

Initially, Employer contends that the Board erred when it reversed the WCJ because the Board deprived Employer of its only means of obtaining the remedy provided by Section 306(f.1)(8) of the Act by failing to apply the provisions of that section, relevant case law, and the doctrine of unjust enrichment.

Section 306(f.1)(8) of the Act, 77 P.S. § 531(8), provides "If the employe shall refuse reasonable services of health care providers, surgical, medical and hospital services, treatment, medicines and sup-plies, he shall forfeit all rights to compensation for any injury or increase in his incapacity shown to have resulted from such refusal."

■ An employer seeking a forfeiture of benefits under Section 306(f.1)(8) bears the burden of demonstrating that a claimant is no longer entitled to benefits. *Genuardi Supermarkets v. Workmen's Compensation Appeal Board (Ovack)*, 674 A.2d 1194 (Pa.Cmwlth.1996). The question is whether the treatment was reasonable, not whether the claimant's refusal was reasonable. *Id.* A claimant who refuses reasonable medical or surgical procedures that would improve his condition and lessen his disability should not be permitted to continue to collect benefits for a permanent loss. *Alltel, Inc. v. Workers' Compensation Appeal Board (Baum)*, 829 A.2d 739 (Pa.Cmwlth.2003).

Employer argues that Claimant was offered reasonable medical treatment of arthroscopic decompression surgery for his injured right shoulder on multiple occasions, including by his own surgeon, Dr. Donofrio. Employer further asserts that it shouldered its burden of proving entitlement to relief in the nature of a forfeiture of Claimant's benefits from the date of Dr. Tucker's initial evaluation on March 13, 2006, until the date he underwent surgery, December 14, 2006. Employer argues that the Board erred when it denied Employer a prospective credit.

According to Employer, the Board's decision was contrary to the Statutory Construction Act, 1 Pa.C.S. § 1922(1), which provides "In ascertaining the intention of the General Assembly in the enactment of

1. This Court's review is limited to a determination of whether an error of law was committed, whether necessary findings of fact are supported by substantial evidence, or whether constitutional rights were violated. *Vinglinsky v. Workmen's Compensation Appeal Board*

*(Penn Installation)*, 139 Pa.Cmwlth.15, 589 A.2d 291 (1991).

2. Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 531(8).

a statute the following presumptions, among others, may be used: (1) That the General Assembly does not intend a result that is absurd, impossible of execution or unreasonable." Employer argues that the Board's refusal to allow a credit against Claimant's future compensation benefits for a period equal to the duration of his refusal of reasonable medical treatment forecloses any opportunity to receive reimbursement for the overpayment. Employer acknowledges that it is not permitted to receive reimbursement from the Supersedeas Fund. *See Land O'Lakes, Inc. v. Workers' Compensation Appeal Board (Todd),* 942 A.2d 933 (Pa.Cmwlth.), *petition for allowance of appeal denied,* 598 Pa. 752, 954 A.2d 579 (2008). If it is unable to obtain reimbursement from the Supersedeas Fund and not permitted to obtain recovery of the overpayment from Claimant, *see Murphy v. Workmen's Compensation Appeal Board (Ames Department Store),* 146 Pa.Cmwlth.366, 605 A.2d 1297 (1992), Employer argues that a future credit is the only viable means to obtain relief.

For support, Employer cites to *Fahringer, McCarty & Grey, Inc. v. Workmen's Compensation Appeal Board (Green),* 107 Pa.Cmwlth. 597, 529 A.2d 56 (1987), and *Kiebler v. Workers' Compensation Appeal Board (Specialty Tire of America),* 738 A.2d 510 (Pa.Cmwlth.1999). In *Fahringer,* Richard V. Green (Green) received partial disability benefits at a rate of $115.66 based upon his earning power of $127.00 per week in accordance with a supplemental agreement executed by Green and Fahringer, McCarty & Grey, Inc. (Fahringer), Green's employer. Previously, Green had received weekly compensation benefits for total disability at a rate of $199 from May 25, 1977, through September 30, 1981, based on an average weekly wage of

**3.** At the time, WCJs were known as referees.

$300.25. At a hearing on September 27, 1983, the parties stipulated that Green's average weekly wage was $211.84 not $300.25. As a result, the proper compensation rate was $56.56 rather than $199. Because of this miscalculation Fahringer had overpaid Green in the amount of $18,320.07. The referee[3] denied Fahringer the right to recoup the $18,320.07 because it was equitably estopped from entitlement to a credit. The Board affirmed. *Fahringer,* 529 A.2d at 57.

Fahringer petitioned for review with this Court which affirmed in part and reversed insofar as the Board held that the doctrine of equitable estoppel precluded Fahringer from seeking recoupment of monies erroneously paid under the supplemental agreement and remanded to the Board for the taking of additional testimony concerning Green's financial situation and for a recomputation of benefits. *Fahringer,* 529 A.2d at 59. This Court reasoned:

> Here, the simple fact is Claimant [Green] received more than $18,000 to which he was not entitled. Certainly, if an employer who entered into what was assumed to be an *illegal* agreement is entitled to restitution based on principles of unjust enrichment, the instant Employer [Fahringer], who pursues his right to credit with clean hands, must also be entitled to restitution....
>
> We do not believe, however, that the Board's power to modify the agreement and thereby award restitution is unlimited. Section 413 of the Act, 77 P.S. § 771, provides:
>
> A referee of the department may, at any time, review and modify or set aside a notice of compensation payable and an original or supplemental agreement or upon petition filed by either party with

the department, or in the course of the proceedings under any petition pending before such referee, if it be proved that such notice of compensation payable or agreement was in any material respect incorrect.

It is clearly established that where mathematical miscalculation occurs, this Section may be properly invoked to correct the error.... It is also established, however, that the referee or Board's authority to modify is limited to correcting errors in *existing* agreements.... (Citations omitted).

*Fahringer,* 529 A.2d at 58–59. This Court allowed a credit for the time from the execution of the supplemental agreement because the WCJ or Board was only authorized to modify an existing agreement.

In *Kiebler v. Workers' Compensation Appeal Board (Specialty Tire of America),* 738 A.2d 510 (Pa.Cmwlth.1999), Eric Kiebler (Kiebler) had received weekly compensation benefits of $451.85 based on an average weekly wage of $677.77, pursuant to a notice of compensation payable. Specialty Tire of America (Specialty), Kiebler's employer, filed a review petition and alleged that Kiebler was overpaid because Specialty had allocated a bonus Kiebler received to the last quarter, when it was received, rather than allocating it over the entire year. The WCJ granted the review petition but determined that Specialty had to apply to the Supersedeas Fund for reimbursement rather than deduct it from Kiebler's future benefits. On review, the Board ruled that Specialty could recoup its overpayment by deducting $50.85 from his benefit checks for ninety-two weeks. Kiebler petitioned for review with this Court. *Kiebler,* 738 A.2d at 511–512. This Court followed the reasoning in *Fahringer* and determined, "[c]onsidering that Employer [Specialty] is seeking a credit to prevent Claimant [Keibler] from recovering an er-roneous overpayment of compensation, this case presents one of those unusual circumstances where an Employer may recoup directly from Claimant." *Kiebler,* 738 A.2d at 513.

■■ First, with respect to Employer's contention that the Statutory Construction Act compels a credit against future earnings, this Court must disagree. A review of Section 306(f.1)(8) of the Act, 77 P.S. § 531(8), does not authorize a deduction from future benefits for noncompliance with the Act. In fact, although a reviewing court should construe a statute, if possible, to give effect to all of its provisions, Section 1921(a) of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1921(a), a court may not supply a provision omitted from a statutory section even if the omission resulted from the General Assembly's inadvertence or failure to foresee the circumstances in question. *Latella v. Unemployment Compensation Board of Review,* 74 Pa.Cmwlth. 14, 459 A.2d 464 (1983). Therefore, considering that there is no mention in Section 306(f.1)(8), it is certainly not evident from an application of the Statutory Construction Act of 1972 that Employer is entitled to a credit against Claimant's future earnings.

Employer further asserts that *Fahringer* and *Kiebler* lead to the conclusion that it is entitled to a prospective credit on Claimant's future earnings. This Court does not agree. In both *Fahringer* and *Kiebler,* this Court determined that the employer was entitled to a credit on a claimant's prospective earnings under the doctrine of unjust enrichment. That is, the claimants in each of those cases received more benefits than they were legally entitled under the Act and only received those payments because of a clerical error in the calculation of the average weekly wage.

Section 306(f.1)(8) of the Act does not involve clerical errors. Under this section, an employer who believes a claimant has refused medical treatment should petition for suspension of benefits until such time as the claimant agrees to undergo the reasonable medical treatment. In *Land O'Lakes,* this Court stated, "Employer's remedy under Section 306(f.1)(8) is not monetary; rather, it is the ability to force a claimant to choose between the recommended medical treatment and forgoing compensation because medical treatment was refused." *Land O'Lakes,* 942 A.2d at 937. There is nothing in Section 306(f.1)(8) which leads to the conclusion that an employer is entitled to a credit against a claimant's future earnings. Section 306(f.1)(8) is analogous to a suspension or termination petition in which the employer has no right to recovery from a claimant due to the latter's unjust enrichment. No clerical error is involved here.

Employer argues that Section 413 of the Act, 77 P.S. § 772, as utilized in *Fahringer* and *Kiebler,* allows a WCJ to assess the prospective credit it seeks. Section 413 provides in pertinent part:

> A Workers' Compensation Judge designated by the Department, may, at any time, modify, reinstate, suspend, or terminate a Notice of Compensation Payable, an original or Supplemental Agreement or an award of the Department or its Workers' Compensation Judge, upon

Petition filed by either party with the Department, upon proof that the disability of an injured employee has increased, decreased, recurred or has temporarily or finally ceased, or that the status of any dependent has changed.

Employer argues that a WCJ has the authority to change the status of a claimant's disability upon the filing of a petition under Section 306(f.1)(8) of the Act. Once again, this Court must disagree. It is not clear from the Act that the term "status" includes a refusal to undergo reasonable medical treatment. This Court is not permitted to expand the meaning of a statute.

Accordingly, this Court affirms.[4]

## ORDER

AND NOW, this 5th day of May, 2009, the orders of the Workers' Compensation Appeal Board in the above-captioned matters are affirmed.

## DISSENTING OPINION BY Judge SIMPSON.

Section 306(f.1)(8) of the Workers' Compensation Act,[1] provides (with emphasis added):

> If the employe shall refuse reasonable services of health care providers, surgical, medical and hospital services, treatment, medicines and supplies, *he shall forfeit all rights to compensation for any injury or increase in his incapacity shown to have resulted from such refusal.*

---

4. Employer also contends that the Board erred when it reversed the WCJ based in part on a determination that Employer delayed in the filing of its suspension petition. Because this Court has determined that Employer was not entitled to a credit regardless of its alleged delay, this Court need not address this issue. Employer also contends that the

Board erred when it denied Employer's request for rehearing/reconsideration. Once again, because of this Court's disposition of the case, the Court need not address this issue.

1. Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 531(8).

Accordingly, a claimant who refuses reasonable medical or surgical procedures that would improve his condition and lessen his disability should not be permitted to continue to collect benefits for a permanent loss. *Alltel, Inc. v. Workers' Comp. Appeal Bd. (Baum),* 829 A.2d 739 (Pa. Cmwlth.2003); *Litak v. Workmen's Comp. Appeal Bd. (Comcast Cablevision),* 155 Pa. Cmwlth. 147, 624 A.2d 773 (1993). The Act does not permit employees to choose between compensation and cure. *Alltel. See also Muse v. Workmen's Comp. Appeal Bd. (W. Elec. Co.),* 514 Pa. 1, 522 A.2d 533 (1987) (the purpose of the forfeiture statute is to provide a cure where it can reasonably be done; who can be cured and refuses soon dries sympathy). ·

Because the majority opinion fails to apply the statutory directive to the undisputed and prolonged refusal of reasonable surgical services by Claimant here, I respectfully dissent.

Like the thoughtful dissent authored by Commissioner Susan McDermott of the Workers' Compensation Appeal Board (Board), I would allow a credit against any future benefits for Claimant, although I would calculate the credit from the date of the petition rather than the earlier date of a physical examination or physician's report. My conclusion gives effect to the statutory directive, which is rendered meaningless by the majority opinion. I interpret the statutory directive to specify the result to be achieved without restricting the reasonable method by which it is achieved under a given set of facts.

There are two reasons why I would calculate the credit from the date of the petition here. First, calculating the credit from the date of the petition dispels concern that Claimant lacks notice of the potential results of his conduct. Second, calculating the credit from the date of the petition allocates to the employer any de-lay in filing a petition, thereby avoiding concerns about delay that troubled the Board majority. Delay after filing the petition will be controlled by rules of procedure and the informed discretion of the compensation authorities.

For these reasons, I would reverse the Board majority and reinstate, as modified, the credit awarded by the Workers' Compensation Judge.

President Judge LEADBETTER joins in this dissent.