# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Columbia County Commissioners,   :
      Petitioner   :
         :
     v.      :   No. 723 C.D. 2021
         :   Argued: September 12, 2022
Kristie Rospendowski (Workers'   :
Compensation Appeal Board),   :
      Respondent   :


BEFORE:   HONORABLE RENÉE COHN JUBELIRER, President Judge
      HONORABLE PATRICIA A. McCULLOUGH, Judge
      HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge


OPINION BY
PRESIDENT JUDGE COHN JUBELIRER    FILED: December 1, 2022


At issue in this case is whether an employer can offset an overpayment of workers' compensation (WC) benefits paid for one work-related injury through a credit against an award of benefits for a subsequent work-related injury. Both the Workers' Compensation Judge (WCJ) and the Workers' Compensation Appeal Board (Board) determined that while, in some instances recoupment has been authorized to avoid unjust enrichment in WC proceedings, there is nothing in the Workers' Compensation Act (Act),[1] its associated regulations, or precedent, that permits an employer to recoup an overpayment of WC benefits for one injury through a credit against an award of benefits for a different injury. In so holding, the Board noted that this Court, in *Mino v. Workers' Compensation Appeal Board (Crime Prevention Association)*, 990 A.2d 832 (Pa. Cmwlth. 2010), recognized that there was an open issue regarding how an employer would recoup an overpayment

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1 - 1041.4, 2501-2710.

of WC benefits through an offset if those benefits were terminated before full recoupment could be made. (Board Opinion (Op.) at 8 n.1.)[2] The Court is now tasked with resolving this open issue, as well as determining whether, as Columbia County Commissioners (Employer) argue, the WCJ erred in finding that Kristie Rospendowski (Claimant) used sick and vacation time for the relevant period in 2019.

## I. BACKGROUND

### A. *Claimant's Past Injury and Overpayment*

Except as noted, the facts in this matter are not disputed. Claimant is a full-time deputy sheriff for Employer. On January 7, 2011, Claimant sustained a work-related broken right ankle, described in a supplemental agreement as right ankle injury, when she slipped on ice (2011 Injury). Claimant was off work for that injury off and on over a period of four years because the Sheriff did not offer light-duty work. In a modification petition filed by Employer and resolved by WCJ Karl Baldys (WCJ Baldys) related to the 2011 Injury, Employer sought to modify a supplemental agreement based on its overpaying Claimant $14,233.88 in wage loss benefits. This overpayment was due to Claimant's failure to disclose income from other employment and/or provide earnings data as required by the supplemental agreement. (December 7, 2015 WCJ Decision (2015 WCJ Decision), Finding of Fact (2015 FOF) ¶¶ 6, 25; Conclusion of Law (2015 COL) ¶ 9;[3] *see also* July 6, 2020 WCJ Decision (2020 WCJ Decision), FOF (2020 FOF) ¶ 5.)[4] WCJ Baldys held that

---

[2] The Board's Opinion is Item 10 in the Certified Record and is found at pages 197a-209a of the Reproduced Record.

[3] The 2015 WCJ Decision is Item 18 of the Certified Record and is found at pages 126a-34a of the Reproduced Record.

[4] The 2020 WCJ Decision is Item 5 of the Certified Record and is found at pages 180a-87a of the Reproduced Record.

Claimant had been unjustly enriched by the overpayment and that Employer was entitled to a recoupment of benefits. The offset was reduced from $192.00 to $100.00 per week,[5] taking into account hardship on Claimant, but the full amount of the overpayment was to be recouped. (*Id.* ¶ 11.) The 2015 WCJ Decision was issued without prejudice to Employer to seek reimbursement from the Supersedeas Fund as appropriate. Ultimately, Claimant returned to full-duty work without wage loss in 2016, her wage loss benefits for the 2011 Injury ended, and $10,333.88 of the overpayment amount remained unpaid.

### B. Claimant's Current Work Injury and the 2020 WCJ Decision

Claimant subsequently sustained a different work-related injury "in the nature of a low back L5-S1 disc extrusion impinging on the SI nerve root" on January 22, 2019, (2019 Injury) and filed the Claim Petition seeking medical benefits, wage loss benefits beginning February 20, 2019, and counsel fees. (2020 FOF ¶ 2.) After initially denying the allegations, Employer stipulated that it would accept the injury as a L5-S1 disc herniation as a medical-only claim, notwithstanding Claimant's undisputed 27-day wage loss, because it wanted to recoup part of the overpayment from the 2011 Injury as a credit against the benefits owed for the 2019 Injury. (*Id.* ¶ 4.)

During the hearings, Claimant testified[6] as to how the 2019 Injury occurred, and that she advised Employer of the injury, sought medical treatment, and was removed from and eventually returned to her position as a Deputy Sheriff. Claimant

---

[5] WCJ Baldys had granted recoupment in the amount of $192.00 per week which Claimant requested be reduced due to economic hardship.

[6] Claimant's testimony, which is summarized in Findings of Fact 7-14 in the 2020 WCJ Decision, is found in the August 7, 2019 Hearing Transcript, Item 13 of the Certified Record, and at pages 38a-74a of the Reproduced Record.

testified that her vacation and sick time were used for the 27 days she was off work for the 2019 Injury. (*Id.* ¶ 12.) In addition to asserting the credit based on the overpayment, Employer introduced the affidavit of its HR Director,[7] which "indicate[d] that Claimant received her full wages for all time that was reported as missing work for the injury" and "that Claimant did not report that any personal, sick, or vacation time used since January 23, 2019, was for the work injury." (*Id.* ¶¶ 18-19.) WCJ Susan Caravaggio (WCJ Caravaggio) credited Claimant's testimony and found the affidavit not credible as to the use of vacation and sick time for the work injury based on Claimant's contrary testimony. (*Id.* ¶¶ 7, 12, 19.) On this point, WCJ Caravaggio concluded that there was no evidence that the wages paid to Claimant were in lieu of WC payments and, therefore, this did not preclude Claimant's receipt of temporary total disability benefits. (2020 WCJ Decision, COL (2020 COL) ¶ 9.)

WCJ Caravaggio found that Claimant sustained a work-related injury on January 22, 2019, suffered a wage loss between February 20, 2019, and March 17, 2019, and returned to work without wage loss on March 18, 2019. Accordingly, WCJ Caravaggio granted the Claim Petition. On the issue of the payment of wage loss benefits for this period, Employer argued that because the parties are the same in both the 2011 and 2019 Injuries, to deny its requested credit "would perpetuate the unjust enrichment from the 2011 [I]njury." (2020 COL ¶ 4.) WCJ Caravaggio considered Employer's arguments and several court decisions on the issue of the recoupment of an overpayment against a claimant's benefits based on unjust enrichment. WCJ Caravaggio opined that "[e]mployers have been awarded recoupment of benefits due to unjust enrichment of the [c]laimant, as [WCJ] Baldys

---

[7] HR Director's affidavit is Item 19 of the Certified Record and is found at pages 135a-36a of the Reproduced Record.

ordered here in [the 2015 WCJ Decision] related to Claimant's . . . 2011[ I]njury . . . [;] however, nothing in the Act or regulations or appellate decisions [ ] allows for recoupment of benefits due to unjust enrichment related to one injury through a credit on benefits for a different injury." (2020 COL ¶¶ 4-5.) Therefore, WCJ Caravaggio held that Employer was not entitled to the requested credit against the wage loss benefits for the 2019 Injury and directed Employer to pay Claimant.[8] (*Id.* ¶¶ 6-8.)

*C. The Board's Opinion*

Employer appealed to the Board, arguing WCJ Caravaggio erred in denying it a credit and in finding that Claimant was paid with vacation and sick time, rather than her normal wages in lieu of WC benefits. On the latter issue, the Board discerned no error because this Finding of Fact was based on WCJ Caravaggio finding Claimant's testimony "that she received no benefits during the period she was out of work and used sick and vacation time" more credible than HR Director's affidavit. (Board Op. at 9.) As questions of credibility fall within a WCJ's role as fact finder, the Board did not disturb that finding. On the former issue, the Board considered the decisions reviewed by WCJ Caravaggio and concluded that while those decisions allowed for the recoupment of the overpayment of benefits, "none . . . involved more than one injury date." (*Id.* at 8.) The Board observed that Employer did not cite any authority on point, instead arguing that under *Kiebler v. Workers' Compensation Appeal Board (Specialty Tire of America)*, 738 A.2d 510

---

[8] WCJ Caravaggio also found that Employer violated the Act by not paying Claimant WC benefits but did not award any penalties. WCJ Caravaggio also did not award Claimant litigation costs because Claimant had not submitted evidence in support of that award. Although Claimant appealed these determinations to the Board, which affirmed, Claimant has not pursued them on appeal.

(Pa. Cmwlth. 1999), a WCJ has the implied power to impose equitable remedies. Due to "the absence of any authority allowing offset for an overpayment for one injury against benefits payable for a new and distinct injury, [the Board] decline[d] to disturb [WCJ Caravaggio's] determination." (*Id.*) In a footnote, the Board further observed:

> [Employer] asserts that it has been unable to recoup the entire overpayment made for the 2011 [I]njury as Claimant has not had a loss of earnings related to the 2011 [I]njury since September 12, 2016, when she return[ed] to work. We recognize [Employer's] situation and note that at least one court has commented upon the uncertainty that may arise in situations of offset of future benefits. In *Mino*, the court noted that there was an open issue as to how the [employer] there would recoup its overpayment through an offset in the future if a pending termination petition were ultimately granted. The concurring opinion indicated that cases such as *Kiebler* only allowed payments from future compensation and that if the claimant's benefits were terminated, [the concurring judge] would hold that the WCJ lacks jurisdiction to order payment directly from the claimant. The concurring judge also indicated he would hold that an offset could only be collected from benefits awarded in a proceeding before a WCJ and could not be banked to be offset from any compensation, if awarded, in future proceedings. We believe our disposition is consistent with this reasoning.

(*Id.* at 8 n.1.) Employer now petitions this Court to review the Board's Order.[9]

## II. DISCUSSION

### A. *The Availability of Recoupment Against Claimant*

#### 1. The Parties' Arguments

Employer argues that this matter involves an issue of first impression: "whether an [e]mployer[] can assert a credit against [wage loss] benefits for a work

---

[9] This Court's review "is limited to determining whether necessary findings of fact are supported by substantial evidence, whether an error of law was committed, or whether constitutional rights were violated." *Elberson v. Workers' Comp. Appeal Bd. (Elwyn, Inc.)*, 936 A.2d 1195, 1198 n.2 (Pa. Cmwlth. 2007).

injury against an outstanding overpayment of [wage loss] benefits for a prior work injury based upon principles of unjust enrichment, when both work injuries involve the identical [c]laimant and [e]mployer[]." (Employer's Brief (Br.) at 18.) Employer contends that this Court in *Kiebler* held that imposing equitable principles and remedies is an implied power of a WCJ under Section 413(a) of the Act, 77 P.S. § 771, and that such principles and remedies need not be specifically stated in the Act. In that case, Employer argues, this Court concluded that the employer could recoup an overpayment from the claimant's future benefit payments to prevent the claimant from becoming unjustly enriched by the erroneous overpayment of benefits. Because no section of the Act precludes an employer from asserting a credit for one injury based on an overpayment from a prior injury, Employer argues it should be allowed a credit against benefits for the new injury where both injuries involve the same parties, the overpayment was the direct result of a claimant's bad faith, and the failure to grant the credit results in further unjust enrichment. In this case, WCJ Baldys found that Claimant had been unjustly enriched due to her failure to inform Employer that she was receiving wages from a new employer while receiving her wage loss benefits for the 2011 Injury and directed that Claimant's future wage loss benefits be reduced until that overpayment was fully recouped. Employer maintains that it should not be required to pay Claimant wage loss benefits for the 2019 Injury while an outstanding overpayment exceeding $10,000.00 remains and it has no other recourse to recoup that amount. Such result, Employer contends, frustrates the intent of *Kiebler* and *Fahringer, McCarty & Grey, Inc. v. Workmen's Compensation Appeal Board (Green)*, 529 A.2d 56 (Pa. Cmwlth. 1987) (*Fahringer*), and is contrary to the equitable and humanitarian purposes of the Act,

7

which should be interpreted to require fairness and prohibit a party from receiving a windfall.

Claimant responds that all of the cases in which recoupment of an overpayment was granted on the basis of unjust enrichment involved a single injury, not two, unrelated injuries as here. According to Claimant, Employer is asking the Court to expand the scope of unjust enrichment and recoupment farther than any Pennsylvania court addressing this topic has gone and to create new law notwithstanding the absence of any statutory or regulatory authority, or judicial precedent, for support. Claimant maintains that the Board's Order, affirming WCJ Caravaggio's determination that "there is . . . nothing in the Act or regulations or appellate decisions that allows for recoupment of benefits due to unjust enrichment related to one injury through a credit on benefits awarded for a different injury," should be upheld. (Claimant's Br. at 7.)

2. Analysis

As the parties all agree, and WCJ Caravaggio and the Board held, there is no provision in the Act or its regulations that expressly allows the relief Employer seeks, nor is there a provision that prohibits it, and no court has granted an offset to recoup an overpayment for one work-related injury against the benefits of a subsequent work-related injury. However, this Court has found that WCJs have implied authority under the first paragraph of Section 413(a) of the Act to impose equitable remedies, such as restitution and recoupment, to avoid double recoveries and unjust enrichment. It is this provision upon which Employer relies to argue that we should extend relief which includes the ability to order the recoupment of monies unjustly received for one work injury against a future, unrelated work injury so long as the parties are the same because, otherwise, the unjust enrichment continues.

8

Section 413(a) states:

> [a WCJ] may, at any time, review and modify or set aside a notice of compensation payable and an original or supplemental agreement or upon petition filed by either party with the [D]epartment [of Labor and Industry], or in the course of the proceedings under any petition pending before such [WCJ], if it be proved that such notice of compensation payable or agreement was in any material respect incorrect.

77 P.S. § 771. Essentially, Section 413(a) authorizes a WCJ to act when an agreement was materially incorrect. For example, in *Fahringer*, where the employer erroneously paid benefits under an agreement due to a miscalculation, an offset to recoup the overpayments was permitted under Section 413(a).

In its opinion, the Court in *Fahringer* examined the Board's award of restitution for overpayments made under a prior Notice of Compensation Payable (NCP) and a subsequent supplemental agreement to determine whether the award, which included a credit for both amounts, fell within the statutory authority to modify agreements for compensation under the first paragraph of Section 413(a).[10] While the Court agreed that the employer was entitled to restitution because the claimant had received monies to which he was not entitled, the employer's entitlement was limited. The Court observed that "[t]he doctrine of unjust enrichment is an equitable one," and the Board "does not have its roots in equity." *Fahringer*, 529 A.2d at 59. Accordingly, the Board's "use of such principles must be restricted **in light of [the Board's] statutory constraints**." *Id.* (emphasis added). Because Section 413(a) applied only to existing agreements, the employer could not obtain restitution for the overpayments that had been made under the NCP, which

---

[10] *Fahringer* involved the former version of Section 413(a), which was identical to the current version beyond its use of the term referee, as WCJs were previously called. 529 A.2d at 58.

had been replaced by the supplemental agreement, and, therefore, was no longer an existing agreement. In contrast, the Court held restitution could be ordered for the overpayments made under the then-existing supplemental agreement, which was the agreement that was being modified under Section 413(a) via the employer's petition. *See also DeMontis v. Workmen's Compensation Appeal Board*, 372 A.2d 950, 952-53 (Pa. Cmwlth. 1977) (a widow could not petition to review and modify a partial disability agreement entered into by the decedent under this provision because, upon the decedent's death, that agreement no longer "existed").

Similarly, in *Kiebler*, a claimant's disability benefits were modified and a credit granted against a claimant's future compensation benefit due to overpayments made based on an inaccurate average weekly wage (AWW) in an NCP. The Court observed that

> Section 413[(a)] does not expressly provide that a WCJ or the Board has equitable powers and the Act as a whole is silent on the question of equitable remedies. Section 413[(a)], however, **gives a WCJ broad authority to modify a notice of compensation payable, award or agreement**, and a WCJ may thereby reach the question of whether a party was erroneously overpaid or underpaid. Because Section 413[(a)] gives a WCJ the power to decide these difficult problems, which often may be resolved only by disgorging funds from the party who has been unjustly enriched, we believe that **the authority to utilize the equitable remedy of restitution is implied in the statute**. *See Dep['t] of Env['t] Res[.] v. Butler C[nty.] Mushroom Farm*, . . . 454 A.2d 1 ([Pa.] 1982) (where a particular remedy is not explicitly provided for in a statute, the power to exercise the remedy may nonetheless be implied from the language of the [a]ct); *B.G. Balmer & Co. v. Ins[.] Comm['r]*, . . . 538 A.2d 968 ([Pa. Cmwlth.] 1988 (citing *Fahringer*, the Court held that the authority of the Insurance Commissioner to order restitution was implied in statute).

*Id.* at 516 n.10 (emphasis added). Employer relies on the Court's reference to a WCJ's "broad authority" under Section 413(a) to argue that WCJ Caravaggio had

the authority to award the requested credit here. However, while the Court discussed the Board's need to "decide these 'difficult problems,'" through ordering the disgorgement of funds from an unjustly enriched party, it recognized that the authority to do so had to be derived from the **Act's** broad **authorization** of the Board to modify or set aside agreements. *Id*.[11]

Under Section 413(a) as interpreted, in the absence of an existing agreement, there is no recoupment for an overpayment of benefits. In *Dollar Tree Stores, Inc. v. Workers' Compensation Appeal Board (Reichert)*, 931 A.2d 813 (Pa. Cmwlth. 2007), the employer sought, via a review petition, to recoup from a claimant an overpayment of monies paid based on an incorrect AWW, but the employer had not issued an NCP or any other agreement regarding the work injury. The WCJ awarded

---

[11] In a strongly worded dissent, Judge Pellegrini disagreed with the creation of a "blanket rule" under *Fahringer* that would allow credits against an "innocent" claimant's future benefits based on an employer's erroneous calculation. *Kiebler*, 738 A.2d at 517-18 (Pellegrini, J., dissenting). Such a rule, in his view, took

> a cynical view that the compensation system is an adversarial process and not an insurance system to aid injured workers, and that nothing an employer says or calculations it has made can be relied upon in any way by the claimant; if the claimant does so, he or she does so at his or her own risk. Just as in *Fahringer*, while invoking equitable principles, the majority here takes the position that the doctrine of unjust enrichment prevails incongruously no matter what the competing equities are. The competing equities demand that where there is no fraudulent behavior by the claimant, the employer or its carrier bear the loss of payments made as a result of their negligent miscalculation, especially insurance carriers [that] are in the business of making calculations, and they are better able to bear the loss than the claimant who would have to pay the employer back out of his or her already reduced compensation payments and possibly not be able to care for the daily living needs of his or her family.

*Id.* Given that the overpayment here was the result of Claimant's failure to advise Employer of her additional wages, rather than a mistake by Employer, Claimant cannot reasonably be considered one of the "innocent" claimants of which Judge Pellegrini speaks in his dissenting opinion.

a credit against the claimant's future benefits, but the Board reversed and this Court affirmed. The employer argued that under *Fahringer*, recoupment could be ordered simply under the doctrine of unjust enrichment. We disagreed that *Fahringer*'s holding was so broad. Instead, we stated that *Fahringer* held "that a claimant can only be ordered to reimburse an employer under Section 413(a) of the Act if there exists an incorrect agreement to modify." *Dollar Tree Stores*, 931 A.2d at 815 (internal quotation marks omitted). As there was no agreement, the Court concluded that Section 413(a) did not provide the WCJ "the power to order a recoupment for an overpayment" of benefits. *Id.* at 816.

*Fahringer* and *Kiebler* relied on Section 413(a), under which an existing agreement, which was materially incorrect, could be modified so the employer could recoup the overpayments against future payments. These cases involved the same injury and did not allow recoupment of payments under an agreement that no longer existed even if related to the same work injury. The opinions thus tethered the Board's authority to order recoupment through a credit against future benefits to a statutory provision, Section 413(a), and limited the scope of that authority to the boundaries of that provision by allowing for recoupment where the overpayment and credit related to the same, existing agreement.

Here, Employer seeks a credit under Section 413(a) in a situation that involves not only two separate work-related injuries, but also two separate "agreements": the prior supplemental agreement for the 2011 Injury and Employer's acknowledgment of the existence of the 2019 Injury. While it does not appear that the supplemental agreement for the 2011 Injury still "exists,"[12] there is no dispute that Claimant is not currently receiving payments pursuant to that agreement which could be offset.

---

[12] Employer represented at oral argument that the supplemental agreement for the 2011 Injury was recently terminated by a WCJ's decision. However, such termination is not of record.

12

Rather, the future compensation against which Employer seeks a credit for its prior overpayment will be paid for a different injury and pursuant to a different agreement. The relief Employer requests is akin to the employer's attempt in *Fahringer* to recoup overpayments made under the NCP from the benefits paid to the claimant under the supplement agreement, which this Court rejected as being beyond the Board's authority implied in Section 413(a). As in *Fahringer*, Employer's requested relief is not available within the Board's authority arising out of Section 413(a). Therefore, Section 413(a) does not, as Employer argues, authorize a WCJ to grant Employer the credit it seeks against Claimant's benefits for the 2019 Injury.

Employer also argues that equitable relief should be granted because nothing in the Act precludes granting a credit against the 2019 Injury and that, without the requested credit against Claimant's benefits for that injury, it has no recourse to recover the outstanding amounts. While there is nothing that expressly precludes the grant of a credit under equitable principles, our Supreme Court has cautioned that courts should listen not only to what a statute says, but also to what it does not say. *County of Allegheny v. Workers' Comp. Appeal Bd. (Parker)*, 177 A.3d 864, 874 (Pa. 2018). Similarly, courts are not to engraft language to the Act not included by the General Assembly to remedy a perceived infirmity, as doing so is not the courts' role. *Keystone RX LLC v. Bureau of Workers' Comp. Fee Rev. Hearing Off. (Compservices Inc./AmeriHealth Cas. Servs.)*, 265 A.3d 322, 333 (Pa. 2021). Thus, the lack of language specifically precluding that relief does not necessarily support the conclusion that relief under Section 413(a) should be extended to cover this scenario. And, although there have been times where the general principles of restitution have been applied in WC matters, *Lucey v. Workmen's Compensation Appeal Board (VY-CAL Plastics PMA Group)*, 732 A.2d 1201, 1204 (Pa. 1999);

*Mino*, 990 A.2d at 841, the more recent approach to determining what remedies are available has been more limited. *See, e.g.*, *Keystone RX LLC*, 265 A.3d at 333; *Parker*, 177 A.3d at 874. The Court understands Employer's position and is similarly troubled because the overpayment at issue results from Claimant's intentional act in not disclosing required information about her earnings to Employer. However, the fact that no recourse may exist under the Act does not authorize this Court to act outside its role to create a remedy that the General Assembly did not provide, *Keystone RX LLC*, 265 A.3d at 333; *Parker*, 177 A.3d at 874, or to apply a remedy that does not arise under a statutory provision, like Section 413(a), *Kiebler*, 738 A.2d at 514, 516 n.10; *Fahringer*, 529 A.2d at 57-59.[13]

---

[13] Employer may not be wholly without relief. In at least two cases, an employer or insurer filed equitable actions in courts of common pleas (common pleas) based on a claimant's fraudulent, or alleged fraudulent, concealment of information that would eliminate or reduce the amount of WC benefits being paid. *See Liparota v. State Workmen's Ins. Fund*, 722 A.2d 253 (Pa. Cmwlth. 1999); *Glen Alden Corp. v. Tomchick*, 130 A.2d 719 (Pa. Super. 1957). In *Glen Alden*, the Superior Court held that an employer could bring an action in equity in common pleas to recover an alleged overpayment of benefits based on a widow's failure to advise the employer of her remarriage. 130 A.2d at 721. The Superior Court explained that although the equitable remedy under Section 413 could not apply because there was no existing agreement, there was "an obvious case of unjust enrichment . . . over which [common pleas] ha[d] jurisdiction." 130 A.2d at 721 (internal quotation marks omitted). In *Liparota*, an insurer filed an equity action to recover 17 months of WC wage loss benefits it had paid based on the claimant's failure to inform the insurer that he had returned to work. 722 A.2d at 254. The common pleas court granted the insurer relief, noting that it was "without an adequate remedy under the provisions of the Act" and it had "established at trial, [that the claimant had] actively concealed his concurrent receipt of [WC] benefits and actual wages," which "amount[ed] to more than an overpayment" of benefits. *Id.* at 255. This Court ultimately did not consider the merits of common pleas' decision as the claimant in *Liparota* failed to file post-trial motions and, therefore, waived all of his issues for appeal. 722 A.2d at 256. Notably, seeking remedies outside the Act was recently identified by Justice Wecht in his concurring opinion in *Keystone RX LLC* as a solution in situations where the Act provides no remedy, and the courts were precluded from "judicial[ly] re-writing . . . the Act" to do so. *Keystone RX LLC*, 265 A.3d at 333-35 (Wecht, J., concurring).

14

For these reasons, we discern no error in the Board's conclusion that Employer may not assert a credit against Claimant's indemnity benefits for the 2019 Injury to recoup its overpayment from the 2011 Injury.

### B. *Use of Claimant's Vacation and Sick Time*

#### 1. The Parties' Arguments

Employer also argues that the Board erred in affirming WCJ Caravaggio's finding that Claimant used her vacation and sick time for the 27 days she was removed from work for the 2019 Injury because that finding is not supported by substantial evidence. Employer asserts that Claimant's testimony, even if credited, was not clear that she used vacation and sick time for the entire period and, therefore, could not be used to support that finding. In contrast, Employer notes, it submitted the affidavit of its HR Director, who indicated that "to the best of [HR Director's] knowledge, [Claimant] was not forced to use any sick or vacation time," and Claimant's paystubs did not reflect that she was paid sick or vacation time. (Employer's Br. at 23-24.) Claimant responds that her credible testimony, which rebutted HR Director's affidavit, supports WCJ Caravaggio's finding, and credibility determinations are for the fact finder.

#### 2. Analysis

"It is well established that the WCJ is the ultimate fact finder and is empowered to determine witness credibility and evidentiary weight. The WCJ, therefore, is free to accept or reject, in whole or in part, the testimony of any witness, including medical witnesses." *Griffiths v. Workers' Comp. Appeal Bd. (Red Lobster)*, 760 A.2d 72, 76 (Pa. Cmwlth. 2000). In a substantial evidence challenge,

it is irrelevant whether the record contains evidence to support findings other than those made by the WCJ; the critical inquiry is whether there is evidence to support the findings actually made. . . . We review the entire record to determine if it contains evidence a reasonable mind might find sufficient to support the WCJ's findings. . . . If the record contains such evidence, the findings must be upheld even though the record contains conflicting evidence.

*Lahr Mech. v. Workers' Comp. Appeal Bd. (Floyd)*, 933 A.2d 1095, 1101 (Pa. Cmwlth. 2007) (citations omitted). This inquiry requires that we "view the evidence in the light most favorable to the prevailing party and give [that party] the benefit of all inferences reasonably deduced from the evidence." *Edwards v. Workers' Comp. Appeal Bd. (Epicure Home Care, Inc.)*, 134 A.3d 1156, 1161-62 (Pa. Cmwlth. 2016).

Here, the WCJ accepted Claimant's testimony that the source of her payments while she missed work for the 2019 Injury was her vacation and sick time over the conflicting statements in HR Director's affidavit. Employer argues Claimant's testimony is insufficient to constitute substantial evidence to support the finding. We disagree. Claimant testified before the WCJ as follows:

Q: During the time that you were off from work, did you receive any type of benefits, such as [u]nemployment, private disability or anything like that?

A: No, I didn't.

Q: Did you use any vacation or sick time?

A: They – work used my vacation and sick time.

Q: Do you know how many days?

A: I don't know the total.

(August 7, 2019 Hr'g Tr. at 29, R.R. at 58a.) Employer argues that Claimant's inability to say "the total" number of days of vacation and sick time used renders her

16

testimony insufficient to support WCJ Caravaggio's finding. We view such argument as going to Claimant's credibility, rather than the competency of her testimony. Although Claimant may have been unaware of the total number of days, she clearly testified that Employer used her vacation and sick time to pay her while she was off due to the 2019 Injury. Viewing that testimony in the light most favorable to Claimant, a reasonable mind might find it sufficient to support the WCJ's finding. *Lahr Mech.*, 933 A.2d at 1101. Accordingly, we are constrained to hold that WCJ Caravaggio's finding is supported by substantial evidence and must be upheld, *id.*, and that this is not a reason to reverse the Board's Order.

## III. CONCLUSION

Because we conclude there was no error in denying Employer's request for a credit against Claimant's WC benefits for the 2019 Injury for the overpayment of benefits related to Claimant's 2011 Injury based on the lack of statutory support in the Act for such credit and are constrained to hold that the WCJ's finding that Claimant was paid sick and/or vacation time while she was off work for the 2019 Injury is supported by substantial evidence, the Board's Order is affirmed.

_____

**RENÉE COHN JUBELIRER,** President Judge

17

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Columbia County Commissioners,    :
               Petitioner    :
                        :
          v.            :   No. 723 C.D. 2021
                        :
Kristie Rospendowski (Workers'    :
Compensation Appeal Board),    :
             Respondent    :

# O R D E R

**NOW**, December 1, 2022, the Order of the Workers' Compensation Appeal Board, entered in the above-captioned matter, is **AFFIRMED**.

_____
**RENÉE COHN JUBELIRER,** President Judge